[No. 7,213.—In Bank.]

## DESMOND v. DUNN.

MUNICIPAL CORPORATIONS — CONSTITUTIONAL LAW — CONSTRUCTION OF THE CONSTITUTION.—Under § 6, art. xi, of the Constitution, cities and counties previously incorporated are subject to or controlled by general laws enacted under the Constitution for the organizations of such governments, but the charters of such cities and towns remain in force in each case, until a majority of the electors of the corporation determine to become organized under general laws, or to frame a charter for their own government.

ID.— ID. — ID. — CONSOLIDATED CITY AND COUNTY GOVERNMENTS — SAN FRANCISCO — THE McCLURE CHARTER.— By § 7 of the same article the provisions of the Constitution applicable to cities apply also to consolidated city and county governments; and, therefore, the act known as the McClure Charter, even if constitutional, does not apply to the corporation known as the City and County of San Francisco, until a majority of the electors of the corporation, voting at a general election, shall so determine.

ID.—ID.—ID.—ID.—ID.—ID.—The provision of § 7 of the same article: that "In consolidated city and county governments of more than one hundred thousand inhabitants there shall be two Boards of Supervisors, or Houses of Legislation," has reference to general laws or charters for the government of

such corporations passed subsequently to the adoption of the Constitution; and, therefore, the act of incorporation of the City and County of San Francisco, known as the Consolidation Act, is not in conflict with the provisions of the Constitution, and remains in force by virtue of the first clause of § 1 of the schedule to the Constitution.

ID.—ID.—ID.—ID.—ID.—ID.—GENERAL LAWS — DEFINITION.—Sections 6 and 7 of art. xi of the Constitution evidently contemplated the enactment of general laws providing for *all* corporations for municipal purposes, and not for *some* only; and such laws must be as general as the subject to which they relate. The McClure Charter is, therefore, unconstitutional: 1st. Because it excludes from its operation all municipal corporations, except consolidated city and county governments; and secondly, because it is also limited to municipal corporations having more than one hundred thousand inhabitants, and makes no provision for those having less than that population.

ID.—ID.—ID.—GENERAL LAW — CLASSIFICATION — DEFINITION.— The classification provided for in § 6, art. xi of the Constitution, is one that will include all cities and towns.  The act in question, therefore, does not comply with this provision.

APPLICATION for writ of *mandamus*.

The facts are stated in the opinion.

*A. G. Platt*, for Plaintiff.

The act in question is a general law, as it refers to a class, to wit, " all over one hundred thousand in population."  A general law is one that refers to persons and things *as a class*. (*State* v. *Parsons*, 1 N. J. Law Journ. 83 ; *Kilgore* v. *Magee*, 85 Pa. St. 411 ; *Wheeler* v. *Philadelphia*, 77 id. 349 ; *Commonwealth* v. *Patton*, 88 id. 260 ; *Haskel* v. *City of Burlington*, 30 Iowa, 236 ; *Walker* v. *Potter*, 10 Ohio St. 85; *Gentile* v. *The State*, 29 Ind. 411 ; *McAunich* v. *Miss. & Mo. R. R. Co.* 20 Iowa, 343.)

This is a consolidated city and county government.  The city and county governments are merged into a new and entirely distinct government—one that is neither a city nor a county.  A classification of *cities* would not then apply to consolidated governments.  The act in question does this by providing for " merged and consolidated cities and counties of more than one hundred thousand inhabitants."  This is a classification, and is recognized in § 7, art. xi, of the Constitution.

It is not necessary that this act be submitted to the electors of the city and county to be adopted by them.  The Legisla-

ture has power to create, amend, destroy, and control municipal corporations. It may impose upon them charters, and it need not obtain the consent of the people to be affected. (Dillon on Mun. Corp. §§ 18, 23, 30, and 38.) This power exists unless there is an express inhibition in the Constitution.

Section 6, art. xi, of the Constitution, provides that " all cities or towns *heretofore* or hereafter organized, and all charters thereof framed or adopted by authority of the Constitution *shall be subject to and controlled by general laws.*" What becomes, then, of their right of election in the matter ?

The provision in § 6, art. xi, that " cities and towns heretofore organized * * * may become organized under such general laws, etc.," must be construed as giving the right of election only to corporations whose charters are not inconsistent with the Constitution; otherwise, if the former organization is under an organic law inconsistent with the Constitution, it must cease on the 1st day of July, 1880. (§ 1, art. xxii, Const.)

The present Consolidation Act provides only for one Board of Supervisors, and is, therefore, in conflict with § 7, art. xi, of the Constitution, which provides that in consolidated cities and counties having over one hundred thousand inhabitants there shall be two. This provision is *mandatory*. (§ 1, art. xxii, Const.; Cooley on Const. Lim. 78, 79, 140, 150 ; *State* v. *Maynard*, 14 Ill. 421 ; 21 N. Y. 12 ; Report of Const. Conv. 112th day.) The *Consolidation Act* is, therefore, in a most material part unconstitutional, and on the 1st of July must pass out of existence. The Court must consider such result in construing the Constitution.

*Greathouse & Blanding*, and *W. T. Baggett*, for Defendant.

The provisions of the McClure Charter are not applicable to the City and County of San Francisco.

Under §· 6, art. xi of the Constitution, " Cities heretofore incorporated may organize under general laws *whenever a majority of electors, voting at a general election, shall so determine.*" It is claimed by the plaintiff, that the provision does not apply to the City and County of San Francisco. But this is no longer an open question in this State. (*McDonald* v. *Patterson*,

54 Cal. 245.)    We therefore conclude that the city government will continue as at present, until a majority of electors . shall determine to organize under a general law, or until a freeholders' charter is ratified by the Legislature.

It is claimed that § 7 provides for two Boards of Supervisors or Houses of Legislation, and that unless the McClure Charter be held applicable, there will be no legislative department for this city and county.    We think it clear that all the provisions of § 7 were intended to apply only to corporations which might thereafter be organized.

The act is unconstitutional.    It is special and local, in that it makes a classification repugnant to the Constitution. (Const. § 6, art. xi.)    Instead of making a general classification by population, it is in terms limited : 1st, to merged and consolidated governments; and 2nd, to such merged and consolidated governments as contain more than one hundred thousand inhabitants.    We think no classification could be made except by population, and that this should be general, and embrace all cities and towns.

San Francisco is the only city and county in the State which comes within the class.    Wherever a class is made which, though general in its terms, is intended to apply, and in fact applies, only to one locality, the law is special and local, and therefore repugnant to the Constitution respecting special and local laws.    (*State* v. *Mitchell*, 31 Ohio St. 607 ; *Devine* v. *Comm'rs of Cook Co.* 84 Ill. 592 ; *Com.* v. *Patton*, 88 Penn. St. 258.)

Independent of the classification, many, or we may say all, the provisions of the act are intended to apply, and in fact are applicable, only to the city of San Francisco, and the act is as much special and local as if the corporate name was written therein.    (*People* v. *Cooper*, 83 Ill. 591 ; *People* v. *Allen*, 42 N. Y. 412, 416 ; *People* v. *Board of Ed. etc.* 13 Barb. 400–1 ; *People* v. *Albertion*, 55 N. Y. 50 ; *Atkinson* v. *R. R. Co.* 15 Ohio St. 35 ; *Ho Ah Kow* v. *Nunan*, 3 P. C. L. J. 413.)

SHARPSTEIN, J. :

The plaintiff alleges that on the 1st day of June, 1880, he presented to the defendant, who then was, and still is, the

Auditor of the City and County of San Francisco, for allowance, a demand on the treasury of said city and county, which it was the duty of said Auditor to allow, under an act of the Legislature, entitled, " An Act to provide for the organization, incorporation, and government of merged and consolidated cities and counties of more than one hundred thousand population, pursuant to the provisions of § 7, art. xi, of the Constitution of this State. Approved April 24th, 1880." The defendant refused to allow said demand, and the plaintiff applied for and obtained from this Court an alternative writ of *mandamus* to the defendant, requiring him to allow said demand, or to show cause for not doing so. The defendant answered by alleging that the act under which the plaintiff presented his demand for allowance is unconstitutional, and that it was not the duty of defendant, as Auditor aforesaid, to allow any claim or demand thereunder.

The act in question is commonly known as the " McClure Charter," and it will be so designated in this opinion. Although there is but one section of that charter which purports to be in force at this time, we shall base our decision upon grounds which will apply to the entire act. If § 5 is unconstitutional or inoperative, it is so by reason of the whole act being so.

The first question which we shall consider is this : If the McClure Charter be constitutional, can it have any force or effect within a municipal corporation which was incorporated prior to the adoption of the Constitution, until a majority of the electors of such corporation vote to accept or organize under it ? Section 6 of art. xi provides that " cities and towns heretofore organized or incorporated may become organized under general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith ; and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this Constitution, shall be subject to and controlled by general laws." Both of these clauses plainly refer to charters which may be framed by authority of the present Constitution, and the latter clause is expressly limited to charters so framed. Neither applies to charters which existed before the adoption of the present Constitution. All such charters must remain in force until superseded or changed in the mode prescribed by the Constitution.

In the absence of any positive provision to the contrary, this is necessarily implied. These are the only provisions which are expressly made applicable to cities incorporated previously to the adoption of the Constitution; and the first expressly provides that any of such cities may become organized under general laws whenever a majority of the electors of such city shall so determine; and the other, that any charter framed or adopted under the present Constitution shall be subject to and controlled by general laws. But charters not framed or adopted by authority of said Constitution, need not be subject to or controlled by general laws. Therefore, the charter of the City and County of San Francisco, which antedates the present Constitution, and was not framed or adopted by authority of it, is not subject to or controlled by general laws. From which it follows, that if the McClure Charter falls within the term " general laws," it cannot have any force or effect within the City and County of San Francisco, until a majority of the electors thereof so determine in the manner provided in the Constitution, unless there be some other provision of the Constitution which gives force and effect to said charter, without such determination of a majority of the electors.

As these two clauses are the only ones which expressly refer to cities which had charters before and at the time of the adoption of the Constitution, and as many of the other provisions of the Constitution unmistakably refer to charters to be framed or adopted after the adoption of the Constitution, it is clearly our duty, upon well-established principles of construction, to hold that any general provisions which seem to conflict with these special provisions, were intended to apply to charters framed subsequently to the adoption of the Constitution. (Dwarris on Statutes, 765; Cooley's Const. Lim. 63; *Commonwealth* v. *The Council of Montrose*, 52 Pa. St. 391; *Wise* v. *Button*, 25 Wis. 109.)

To the foregoing views, one objection is raised, which is not wholly devoid of plausibility. It is, that the cities mentioned in § 6 are corporations other than consolidated cities and counties, and that, therefore, the provisions of that section do not apply to the City and County of San Francisco. It seems to us, however, that there is a clause in § 7 which wholly obviates

this objection. It reads as follows: "The provisions of this Constitution, applicable to cities, and also those applicable to counties, so far as not inconsistent or not prohibited to cities, shall be applicable to such consolidated governments." The meaning of this plainly is, that all the provisions of the Constitution applicable to cities shall be applicable to consolidated governments; and all the provisions applicable to counties shall also be applicable to such consolidated governments, except such as are inconsistent with the provisions of the Constitution applicable to cities or prohibited to cities; which indubitably makes all the provisions of the Constitution which are applicable to cities likewise applicable to consolidated governments, although provisions applicable to counties may also be applicable to such consolidated governments, if not inconsistent with the provisions of the Constitution applicable to cities, or prohibited by it to them. This strikes us as being such a complete answer to the objection above stated, as to render it unnecessary to suggest any other.

Our first conclusion, therefore, is, that the McClure Charter, if constitutional, cannot take effect as to the corporation known as the City and County of San Francisco, until a majority of the electors of said corporation, voting at a general election, shall so determine.

On the argument, it was insisted that the consequence of this would be to leave said city and county without any government after the first of next month. This suggestion would be entitled to some weight if the language of the Constitution on this point were so ambiguous as to leave room for doubt as to the intention of its framers. In the absence of any such doubt, however, our decision upon the proper construction of the Constitution cannot be influenced by what may be the consequences of a proper construction. But there is no ground for any alarm. Impliedly the Constitution provides that cities, incorporated previously to its adoption, shall continue to exist under their existing acts of incorporation, until a majority of the electors determine to be organized under general laws, or frame a charter for their own government. The argument that the existing charter must cease after the first of next month, because it is inconsistent with the clause of § 7 of the Constitution, which provides, that

" in consolidated city and county governments of more than one hundred thousand population there shall be two Boards of Supervisors, or Houses of Legislation," is based upon what we conceive to be a very narrow view of the provisions of the Constitution; because, if the Constitution has provided, as we think it has, by necessary implication, that the present charter shall remain in force and effect until superseded or supplanted by one framed and adopted in accordance with the provisions of the Constitution, then no provision of the present charter can be justly said to be inconsistent with any provision of the Constitution. The clause relating to two Boards, or Houses of Legislation, has reference to general laws passed or charters framed for the government of cities subsequently to the adoption of the Constitution. Otherwise, cities previously incorporated might, by the neglect of the Legislature to pass general laws, or of the people to frame charters for their government, be left without any governments after the first of next month. If the existing governments of cities, or of consolidated cities and counties, expire on the first of July, 1880, the framers of the Constitution could not have overlooked the contingency which might arise, by which such municipalities would be wholly without governments after that date. And if they foresaw it, as they must have foreseen it, if it can arise, they would have provided against it. We certainly could not, upon a clause of doubtful meaning, hold that the Convention intentionally or heedlessly paved the way for the introduction of " disorganization and chaos "; or that it intended to deprive any municipality of all government, unless such municipality should frame a charter for its own government, or organize under general laws, which might be obnoxious to a majority of its electors, within an unreasonably short period. · " When the Legislature means to invade previously invested rights, to disregard the public interest, and endanger the peace of the commonwealth, its intention must be expressed in terms free from all ambiguity." (*Packer* v. *S. & E. R. Co.* 19 Pa. St. 211.)

The conclusion at which we have arrived is, that the act of incorporation of the City and County of San Francisco, commonly known as " The Consolidation Act," is within the first, and not within the last clause of § 1 of the Schedule to the

Constitution. And we base this conclusion upon what we conceive to have been the intention of the framers of the Constitution, as we gather it from the language of the instrument itself. To us the general intention to emancipate municipalities, as far as it consistently could be done, from the control of the Legislature, is apparent; and we cannot hold that general laws for the government of such municipalities can take effect in any of them, until a majority of the electors so determine, without violating not only the spirit, but likewise the plain letter of the Constitution. The intention being clear, it is our duty to give effect to it.

But it is claimed on behalf of the defendant that the act is unconstitutional. The importance of having that question determined is not wholly obviated by the conclusion above announced. Is the act known as "The McClure Charter" a general law, or does it fall within the definition of "general laws," as that term is used in the Constitution? By the terms of the act itself, it is limited in its operation to consolidated cities and counties of more than 100,000 population. Any city and county government of more than 100,000 population heretofore merged, consolidated, incorporated, and organized, or which may hereafter become so, must be organized, incorporated, and governed by and under "The McClure Charter," if it be constitutional. Does this act fulfill the requirement of § 7, art. xi, of the Constitution, that such consolidated governments "may be incorporated under general laws providing for the incorporation and organization of corporations for municipal purposes"? Is this a general law, "providing for the incorporation and organization of corporations for municipal purposes"? It does not purport to be. By its very terms, it excludes from its operation all "corporations for municipal purposes," except those which may be composed of cities and counties, merged or consolidated into one government. That this is in direct contravention of the Constitution does not admit of any doubt; and for the purpose of arriving at the intention of the framers of the instrument, §§ 6 and 7 of art. xi must be read together. The former provides that "corporations for municipal purposes shall not be created by special laws; but the Legislature, by general laws, shall provide for the incorpo-

ration, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed." Then follows the clause in which provision is made for cities, etc., previously organized.

The obvious meaning of the first two clauses of § 7 is, that the city and county governments may be merged and consolidated into one municipal government, and may be incorporated under general laws providing for the incorporation and organization of corporations for municipal purposes. All the provisions of the Constitution applicable to cities are applicable to such consolidated governments; and all the provisions applicable to counties, which are not inconsistent with the provisions of the Constitution applicable to cities, or prohibited to them, are likewise applicable to such consolidated governments. This evidently contemplates the enactment of general laws providing for the incorporation and organization of all corporations for municipal purposes, and not for the incorporation and organization of *some* corporations for municipal purposes. And city and county governments, when merged, etc., may not be incorporated under general laws providing for the incorporation of *consolidated* city and county governments, for municipal purposes, but under general laws providing for the incorporation and organization of *all* corporations for municipal purposes. How far this act falls short of that requirement can be seen at a glance. (84 Ill. 590; 83 id. 585; 82 id. 472.)

It is urged that the Legislature had the power to classify cities and towns in proportion to population, and that the laws enacted for the government of any one class would be general. But we look in vain in this act, and our attention has not been directed to any other, for the classification of cities and towns in proportion to population. That classification cannot be made on any other basis than that of population. And for the purposes of classification no distinction can be made between a corporation consisting of a simple city and one consisting of a city and county merged into one government, if the population in each is the same. Therefore, the act, which expressly applies to the latter only, does not apply to a class, and is not general, even in the sense contended for.

The act under consideration is not only limited to municipal

corporations of more than one hundred thousand inhabitants, but also to those composed of *cities and counties* containing that population. The Constitution nowhere confers the power to classify in that manner. A city, pure and simple, of more than one hundred thousand inhabitants, could not become organized and incorporated under this act; and yet it is expressly provided that cities shall be classified in proportion to population, and that the provisions of the Constitution applicable to cities shall be applicable to consolidated cities and counties, and that the latter " may be incorporated under general laws providing for the incorporation and organization of corporations for municipal purposes," but impliedly not otherwise.

With these provisions before us, it would be manifestly absurd to hold that a consolidated city and county could be incorporated under a " general law," that a city of equal population could not be incorporated under for " municipal purposes."

But if the Constitution sanctioned a classification, by which municipal corporations, formed by the consolidation of cities and counties, might be classified separately from those not consolidated, this does not attempt to classify the former, nor is it general as to them. It applies exclusively to corporations of that character, which have a population of more than one hundred thousand. Those having a less population are altogether left out; so that this act does not provide, first, for the incorporation of all corporations for municipal purposes; nor, second, for the incorporation of all cities and towns; nor, third, for the incorporation of all city and county governments, which have been or may hereafter become merged and consolidated into one municipal government.

From which it is apparent that this act is repugnant to. the rule, which requires that any general law must be as broad as the subject-matter to which it relates. This is not broad enough to cover all municipal corporations, nor even those consisting of cities and counties merged and consolidated into one municipal government.

Some cases have been cited to show that a law which applies to a particular class of things is sufficiently general to meet the requirements of the Constitution. But this act only applies to a part of a class under the classification authorized by the Con-

.titution. In *Commonwealth* v. *Patton*, 88 Pa. St. 258, it was held that there could be no proper classification of cities and counties, except by population. Manifestly not, where the Constitution provides that they shall be classified in proportion to population.

Having arrived at the conclusion that the entire act is unconstitutional, it is unnecessary to examine particular sections of it for the purpose of determining whether some of them would not be, even if the act generally were otherwise.

It follows that the alternative writ of *mandamus* issued in this case must be dismissed, and it is so ordered.

McKINSTRY, J., THORNTON, J., and McKEE, J., concurred.

MYRICK, J., concurring:

I concur in the judgment, and in the views expressed in the opinion written by Mr. Justice SHARPSTEIN, save as to the conclusion reached in the latter part of the opinion, that the entire act is unconstitutional; as to that, I express no opinion. In regard to the other points referred to in the opinion, I think that the Constitution, directly in two instances, impliedly in one, has placed before the people of the City and County of San Francisco, three courses, either of which may be pursued, viz:

1. They may, under § 8, article xi, (as has been done) elect fifteen freeholders to frame a charter; such charter when framed to be submitted to the people, and if ratified, to be submitted to the Legislature, for its approval or rejection as a whole, without amendment. If ratified and approved, it will supersede any existing charter.

2. If the Legislature has or shall pass a general law providing for the incorporation, organization, and classification, in proportion to population, of cities and towns, they (the people of the City and County of San Francisco) may determine to become organized under such general law whenever a majority of the electors, voting at a general election, shall express their wish to do so.

3. By non-action—that is, by failing to pursue to the end either of the courses above indicated—they may retain and act under their present charter, (known as the Consolidation Act)

except as to such parts as are in conflict with the Constitution, viz., method of street improvements and the like.

[MORRISON, C. J., and ROSS, J., were not present at the argument, and did not participate in the decision.]