[No. 7,774.—In Bank.]

| 58 | 561 |
| 114 | 321 |
| 114 | 563 |

## J. M. WOOD v. BOARD OF ELECTION COMMIS-SIONERS.

SAN FRANCISCO—CONSTRUCTION OF STATUTE.—The City and County of San Francisco is a continuation of the municipal corporation known as the City of San Francisco.

ID.—ID.—MUNICIPAL CORPORATIONS.—Statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities.

*Held,* accordingly, That the act of April 2d, 1866, as amended March 7th, 1872, fixing the time for holding municipal elections in San Francisco, is not repealed by the amendment of March 7th, 1881, to the Political Code.

ID.—ID.—ID.—Amendments to the Political Code do not affect the acts or amendments to the acts enumerated in section 19 of said code.

ID.—ID.—ID.—CONSTITUTIONAL LAW.—The Constitution of 1879 does not repeal the said special acts fixing the time for municipal elections in San Francisco.

ID.—ID.—ID.—ID.—With the exception of Police Judge, Chief of Police, and Assessor, all of the elective officers of San Francisco must be elected at the time fixed by the acts of April 2d, 1866, and March 30th, 1872.

ID.—ID.—ID.—ID.—ROSS, J., concurring, was of opinion that the act of May 7th, 1881, can not operate to postpone the elections provided for in the acts of April 2d, 1866, and March 30th, 1872, because such operation would extend the terms of municipal officers, and therein violate section 9, article xi of the Constitution; but that the act of May 7th, 1881, applies to the City and County of San Francisco, and that its operation in providing for a municipal election in 1882 is constitutional and valid.

ID.—ID.—ID.—ID.—MYRICK, J., and McKEE, J., dissenting, were of the opinion that no election could be held in San Francisco until the first Tuesday after the first Monday in November, 1882.

APPLICATION for mandamus.

The proceedings were brought to compel the defendants to order an election to be held in the City and County of San Francisco, for the election of municipal officers.

*J. M. Wood, R. Ash, W. T. Baggett, J. B. Metcalf,* and *L. Quint,* for Plaintiff.

*David McClure, J. P. Hoge, Barber,* and *Clark,* for Defendants.

SHARPSTEIN, J.:

The question which has to be determined in this case is whether the special act of April 2d, 1866, as amended March 7th, 1872, which fixes the times of holding elections for city and county officers of the City and County of San Francisco, is repealed by an amendment of the Political Code approved March 7th, 1881.

It is necessary in the first place to ascertain and determine the political *status* of the " City and County of San Francisco" under the Constitution and laws of this State. Section 1 of article i of the act of April 19th, 1856, commonly known as "the Consolidation Act," declares that, " The corporation, or body politic and corporate, now existing and known as the City of San Francisco, shall remain and continue to be a body politic and corporate, in name and in fact, by the name of the City and County of San Francisco, and by that name shall have perpetual succession, may sue and defend in

all Courts and places, and in all matters and proceedings whatever, and may have and may use a common seal, and the same may alter at pleasure, and may purchase, receive, hold, and enjoy real and personal property, and sell, convey, mortgage, and dispose of the same for the common benefit." It then proceeds to define the boundaries of said city and county, and transfers all the property and effects of both the late city and county to the corporation formed by the consolidation of both.

Section 6 provides for the election of officers for said city and county, and fixes their terms of office. This section has been repeatedly amended, but the provisions of the preceding sections have never been changed.

It is as clear as language could make it, that the present "City and County of San Francisco" is a continuation of the late municipal corporation known as the " City of San Francisco." Under the Consolidation Act and the acts amendatory thereof, it is nothing more nor less than a municipal corporation, and the question whether a general law affects it or not must be solved by rules which have been established for determining when a general law does or does not apply to a municipal corporation. Ordinarily, a general law, when it relates to a matter concerning which no provision is made in the charter of a municipal corporation or any special act relating exclusively thereto, applies to such corporation the same as to any other political subdivision of the State. But *" it is a principle of very extensive operation that statutes of a general nature do not repeal by implication charters and special acts* passed for the benefit of particular municipalities." (1 Dill. Mun. Corp., § 87.)

Such repeals are not favored. And it has accordingly been held that where the provisions of a city charter and the general law upon the same subject were conflicting and irreconcilable, the provisions of the former were not repealed by the latter. (*S. S. Bank* v. *Davis,* 1 McCarter, 286; *State* v. *Minton,* 1 Dutch. 529; *State* v. *Clark,* id. 54; *Walworth Co.* v. *Whitewater,* 17 Wis. 193; *Janesville* v. *Markoe,* 18 id. 350; *State* v. *Branin,* 3 Zab. 484.) And a clause in the general statute repealing all acts and parts of acts in conflict with it, although sufficiently comprehensive to include any repugnant

provision of law wherever found, has been held not to repeal provisions of city charters which were repugnant to such general law. (*Walworth Co.* v. *Whitewater, Janesville* v. *Markoe,* and *State* v. *Branin, supra.*)

It is true that in the title and in the body of the act of 1881, city and county officers are mentioned in connection with county and township officers. But the significance of that is not so important as it might at first blush appear.

It is only in cases where the charter of a municipal corporation contains provisions upon a certain subject, that a conflicting general law upon the same subject, is inoperative, within such municipal corporation. If neither the Consolidation Act nor any special statute relating exclusively to the City and County of San Francisco had provided at what time elections should be held for the officers of said city and county, the general statute upon that subject would have had the same force and effect within said city and county as it has elsewhere. It doubtless applies to municipal corporations whose charters contain no provision in conflict with that of the general statute upon that subject. And to none other, I think. (*State* v. *Mayor,* 33 N. J. Law, 57; *Cross* v. *Mayor,* 18 N. J. Eq. 305.) The reason of the rule is doubtless this: Whether a general law repeals a charter or other special act in conflict with it, depends upon the intention of the Legislature; and the Courts have always assumed that if the Legislature intended by a general statute to divest a municipal corporation of any right, privilege, or power conferred upon it by a special act, the latter would be in some way unmistakably referred to in such general statute. Perhaps a clause in the latter repealing all special acts in conflict with it might be sufficient. (*Bank* v. *Bridges,* 30 N. J. Law, 112; *State* v. *Morristown,* 33 id. 57.) But in the absence of any reference whatever in the general statute to charters or municipal corporations or special acts relating exclusively thereto, the rule is well settled that the provisions of such charters and special acts are not affected by the provisions of a general statute repugnant thereto. (Noy's Maxims, 19; *Gregory's Case,* 6 Co. 20.)

There is another circumstance which seems to me entitled to some consideration in the discussion of this question. The

act of 1881 is entitled "An act to amend section 4109 of 'An act to establish a Political Code,' approved March 12th, 1872, relating to the election of county, city and county, and township officers, and to repeal sections 4024, 4027, and 4111 of said Political Code."

If it was the intention of the Legislature to amend or repeal the provisions of any other statute than that specified, it is difficult to conceive of a title more repugnant than this is, to that provision of the Constitution which requires that the subject of every act shall be expressed in its title. The subject of this act, as expressed in its title, is the amendment and repeal of certain specified sections of the Political Code. That is its full scope and object, as expressed in its title. And as to any subject embraced in the act, and not expressed in its title, the act is void. (Const., art. iv, § 24.) If it was the intention to amend or repeal any of the provisions of any other statute or statutes, it should have been expressed in the title. As it is not, the Constitution limits its operation to the subject expressed in the title. *Expressio unius est exclusio alterius.* If intended to repeal or amend any special act relating exclusively to the City and County of San Francisco, no title could be more misleading than the one chosen to express that intention. And the test which Courts, in determining whether the subjects of acts were sufficiently expressed in their titles, have applied to them, is whether such titles were of a character to mislead the public or the members of the Legislature, as to the subjects embraced in such acts. As I view it, the Legislature has not in the body of the act of 1881 attempted to repeal the special act relating to the election of officers, for the City and County of San Francisco, and that if such intention were manifest in the body of the act, the failure to express it in its title would render it void.

There is still another reason for holding that the Legislature did not intend by the passage of said general act to repeal said special act. The general act was intended to, and has become a part of the Political Code, and nothing in that code can affect the provisions of the Consolidation Act or any act amending or supplementing it. (Pol. Code, 19.) Upon this question the code is to be construed as it would be if it had been originally enacted in its present form.

An impression, however, seems to prevail, to some extent, that some of the provisions of the new Constitution have a bearing upon this question. Under the Constitution, corporations for municipal purposes can not be created ·by special laws, and those organized before as well as those which might be organized after the Constitution went into effect are subject to and controlled by general laws, *i. e.*, general laws relating to such corporations, or relating to subjects not provided for in the charters of such corporations. (Const., art. xi, § 6.) A city or a city and county, by becoming incorporated, does not cease to be a component part of the State. It must have, within it, officers who will perform duties corresponding to those performed by county officers. This was clearly recognized by the Legislature which passed the Consolidation Act of the City and County of San Francisco. Section 4 of that act provides that, "All the powers and duties of county officers, excepting those relating to Supervisors and Boards of Supervisors, so far as the same are not repealed nor altered by the provisions of this act, shall be considered as applicable to officers of the said City and County of San Francisco, acting or elected under this act."

It is contended, however, that a general law, fixing the time for the election of county officers, applies to a consolidated municipal government, because it is provided in section 7 of article xi of the Constitution, that the provisions of it "applicable to counties, so far as not inconsistent or not prohibited to cities, shall be applicable to such consolidated government." This probably means that any provisions of the Constitution applicable to counties, which are not inconsistent with any provision of the Constitution, applicable to cities, shall be applicable to a consolidated government, unless such provisions are prohibited to cities by the Constitution. But the provisions of this section are clearly prospective, and have reference to such city and county governments as might be merged into one municipal government after the Constitution went into effect. This is made apparent, not only by the language of that section, but more clearly so by a special provision in section 6, applicable to cities incorporated and organized prior to the adoption of the new Constitution, to which the option is given to organize under general laws,

when such shall be passed for their incorporation, or to continue to be municipal corporations under the charters or acts of incorporation passed prior to the adoption of the Constitution. This, as was said in *Desmond* v. *Dunn*, 55 Cal. 242, is clearly implied, and it would require very plain language to convince me that such was not the intention of the framers of the Constitution.

Neither the act of April 2d, 1866, nor of March 30th, 1872, provides for the election of a Police Judge at the time of the election of other officers of said city and county; and the office of Chief of Police is no longer elective.

Section 4109 of the Political Code before the amendment of March 7th, 1881, contained a special clause in which the time of the election and term of office of the Assessor of the City and County of San Francisco are fixed. Neither as originally enacted, nor as amended, does that section provide for the election of Assessor this year. It clearly follows that an Assessor is not one of the officers to be elected this year in said city and county.

With the exception of Police Court Judges, Chief of Police, and Assessor, all the elective officers of the City and County of San Francisco must be elected at the time fixed by the acts of April 2d, 1866, and March 30th, 1872. I think the writ should issue as prayed.

Ross, J., concurring:

I concur in the judgment. It is not denied by any one that there is now in existence a law requiring an election for the elective municipal officers of the City and County of San Francisco, to be held on the first Wednesday in September of the present year, unless the act of the Legislature adopted May 7th, 1881, has repealed it.

It is obvious that to postpone such election would be, in effect, to extend the terms of the incumbents of those offices. To do this would be in direct violation of section 9 of article xi of the Constitution, which declares that the term of no county, city, town, or municipal officer shall be extended beyond the period for which he is elected or appointed. Therefore, if the aim of the act of 1881 was to postpone the election for the elective municipal officers of the City and County

of San Francisco, it would fail in such purpose, because contravening the Constitution of the State. But I do not understand that such was the object of that act, but rather that it was to provide for a uniform system of elections for *all* elective county, city and county, and township officers in the State on the even-numbered years, commencing in the year 1882.

In my opinion this act relates to the City and County of San Francisco as well as to every other part of the State, but, upon well-established principles, it repeals only such portions of the existing laws upon the subject to which it relates as conflict with its own provisions. I see no conflict between the act of 1881 and the law requiring an election to be held in the City and County of San Francisco in September of the present year. The act of 1881 provides for a general election in the year 1882, and every second year thereafter, of all elective county, city and county, and township officers, except Superior Court Judges; Superintendents of Schools, and Assessors. The effect of this legislation will be to shorten the terms of such officers as shall be elected the present year under existing laws, inasmuch as the terms of such officers are, under such laws, fixed at two years. But there is nothing in the Constitution forbidding the Legislature *shortening* the terms of such officers. To the extent of this conflict, but only to that extent, is the old law repealed by the new. Hence I conclude that under the act of April 2d, 1866, as amended March 7th, 1872, there must be held on the first Wednesday in September of the present year an election for the elective municipal officers of the City and County of San Francisco; that the terms of the officers so elected will extend to the first Monday after the 1st day of January, 1883, when they will be succeeded by such officers as may be elected at the general election to be held in the year 1882, under and by virtue of the act of the Legislature approved May 7th, 1881.

I think it proper to add the reasons which lead me to say that the act of May 7th, 1881, applies to the City and County of San Francisco as well as to all other parts of the State.

Section 6 of article xi of the Constitution provides that "Corporations for municipal purposes shall not be created by special laws, but the Legislature by general laws shall provide

for the incorporation, organization, and classification in proportion to population, of cities and towns, which laws may be altered, amended, or repealed." These provisions are clearly prospective; but the framers of the Constitution, recognizing the fact that there were municipal corporations already in existence, proceeded, in the same section, as follows: "Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith." And by the succeeding section the provisions of the Constitution, applicable to cities, and also those applicable to counties, so far as not inconsistent or not prohibited to cities, are made applicable to consolidated city and county governments. Accordingly it was held in *Desmond* v. *Dunn*, 55 Cal. 242, that the Consolidation Act of the City and County of San Francisco can not be vacated or abrogated by any general act of incorporation until a majority of the electors of the City and County of San Francisco determine to become organized under such general act. But while the City and County of San Francisco can not be compelled to surrender its present charter for one it does not want, as was decided in *Desmond* v. *Dunn*, and can not be affected by special legislation under the guise of laws relating to cities, or cities and counties containing a population of more than one hundred thousand inhabitants, as was decided in *Earle* v. *The Board of Education*, yet the City and County of San Francisco remains a subdivision of the State, and is not entirely free from legislative control; for in the same section of the Constitution, in which the then existing city and town organizations are recognized, and the continuance of their existing charters permitted, it is declared that "cities or towns heretofore * * * organized * * * shall be subject to and controlled by general laws." Unless this was so, in the matter of elections, for instance—the question before us in the present case—none ever could be held in the City and County of San Francisco on the even-numbered years, so long as the present charter of that city and county exists; for by it the elections are required to be held on the *odd*-numbered years. Yet the Constitution, in section 5 of article xi, declares that

"the Legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of Boards of Supervisors, Sheriffs, County Clerks, District Attorneys, and such other county, township, and *municipal* officers as public convenience may require, and shall prescribe their duties and fix their terms of office." Pursuant to this mandate of the Constitution, and by virtue of the power thus conferred, the Legislature passed the act of May 7th, 1881. That act does not purport to be limited on its face, nor, in my opinion, is it so in its operation; but it is a general and uniform law, upon a subject expressly committed to the Legislature by the Constitution itself, and upon which the Legislature was, by the Constitution, commanded to act, not for all the State *except* the City and County of San Francisco, but for the whole State, including that city and county, in order that there might be a uniform system of elections throughout the State for the elective officers.

McKINSTRY, J., concurring:

I concur in the judgment. In my opinion the act of May 7th, 1881, in so far as it may operate to extend for a definite period the terms of office of the officers named in section 9 of article xi of the Constitution, contravenes the last clause of that section.

THORNTON, J., concurred in the opinion of Mr. Justice McKINSTRY.

MORRISON, C. J., concurring:

I concur in the conclusion that there should be an election of municipal officers within and for the City and County of San Francisco in September of the present year, but upon the question whether or not the act of 1881 applies to said city and county, I express no opinion, as I do not deem it necessary to pass upon that question in this case. I also concur in the opinion of Mr. Justice Sharpstein that neither the Assessor nor Police Judges are to be elected this year.

MYRICK, J., dissenting:

In dissenting from the judgment of the Court in *Barton* v.

*Kalloch,* I took occasion to express the view that, according
to the Constitution of this State, the elections of all officers,
whether State, county, township, or municipal, were to occur
on the even-numbered years, whatever may be the length of
the terms respectively. I see no reason for changing the
views then expressed. It necessarily follows, in my opinion,
that no election for any officer can be held in the year 1881;
that no election can be held until the first Tuesday after the
first Monday in November, 1882. In San Francisco the "Con-
solidation Act" remains in force except as to such parts as
are in conflict with the Constitution. It is in conflict with
the Constitution as to the time of holding elections, and as to
the commencement of the terms of office. It may be asked,
when did the terms of office of persons throughout the State
holding county, township, and municipal offices in 1880 ex-
pire? I think the Constitution answers the question, viz.:
On the first Monday after the first day of January, 1881, and
where there were no elections of successors, the incumbents
are in office holding over, awaiting the election or appoint-
ment of successors.

McKEE, J., dissenting :

I dissent. The act of 1881, referred to in the prevailing
opinion, is a general law enacted by the Legislature, in pursu-
ance of the provisions of section 5, article xi, of the Constitu-
tion, for the purpose of bringing elections throughout the
State into harmony with the provisions of the Constitution,
which require that all elections shall be held in even-numbered
years. That such was the intention of the Legislature in
passing the act is evident from its language. The act took
effect immediately upon its passage, and it is now, with those
provisions of the Constitution which it is intended to enforce,
the law of the land. There can be no doubt that, by its terms,
it includes the City and County of San Francisco. The pro-
visions of the Consolidation Act of that city which are in con-
flict with it, must therefore give way to it, for, as a general
and uniform law intended to enforce the provisions of the
Constitution, it has superseded and annulled all previous regu-
lations—general or special—upon the same subject. That
being the case, there is not, in my judgment, any law which

authorizes an election to be held in the City and County of San Francisco until the year 1882.

The question of public convenience is not involved in the case. Legally, however, the public will suffer no inconvenience. Those in office, although the terms of office for which they were elected have expired, are entitled to continue to discharge the duties of their office until their successors are elected and qualified. A temporary incumbent is a *de jure* officer, and his term of office is not extended within the intent and meaning of the constitutional provision referred to by Justice Ross.