[No. 8,545.—In Bank.]
Aug. 24, 1882.

JOHN STAUDE *v.* THE BOARD OF ELECTION COMMISSIONERS OF THE CITY AND COUNTY OF SAN FRANCISCO.

MUNICIPAL CORPORATIONS—ELECTIONS—HARTSON ACT—CONSTITUTIONAL LAW.—By the Act of March 7, 1881, amending Section 4109, Political Code (commonly known as the "Hartson Act"), an election of the elective officers of the City and County of San Francisco is required to be held at the general election, to occur in November of the present year.

ID.—ID.—ID.—ID.—(Ross and THORNTON, JJ., and MORRISON, C. J.) The Constitution gives to all cities, and cities and counties, and towns, the right to organize under a general Act of incorporation, which the Legislature was directed to pass, or to continue their existence under their existing charters, as they might elect; but provided that whichever course should be pursued, they should be subject to and controlled by such general laws as the Legislature might enact, other than those for the "incorporation, organization, and classification" of cities and towns; and such a law is the Hartson Act, which simply provides for a uniform system of elections for the elective city and county and township officers in the State, on the even-numbered years, commencing in the year 1882.

ID.—ID.—ID.—ID.—(MYRICK, J., concurring.)—It was intended by the Constitution, that all elections for all persons to be elected to office by the people are to be held in November of the even numbered years; and that this should be the uniform rule throughout the State, including the City and County of San Francisco.

ID.—ID.—ID.—ID.—(SHARPSTEIN and McKINSTRY, JJ., dissenting.)—The Hartson Act was not intended to amend or repeal the provisions of the Act of incorporation of the City and County of San Francisco, which fixed the times of holding elections of officers of said city and county, and if so construed would be unconstitutional. When the Constitution declares that cities organized before its adoption, shall be subject to and controlled by the general laws, it means as to matters not specially provided in charters which existed at the date of the adoption of the Constitution.

ID.—ID. —ID.—ID.—POLICE COMMISSIONERS—CHIEF OF POLICE.—Under the provisions of the Act of April 1, 1878, with reference to the police force of the City and County of San Francisco—the Police Commissioners and Chief of Police are not elective officers.

ID.—ID.—ID.—ID.—ID.—ID.—DEPARTMENTS OF GOVERNMENT.—The third article of the late Constitution, providing for the division of the different powers of the State into legislative, executive, and judicial, means that the powers of the State government, not the local government thereafter to be created by the Legislature, should be divided into three departments, and that the members of one department should have no part or lot in the management of the affairs of either of the other departments, "except in the cases * * * expressly directed or permitted." As thus expounded, it is obvious that the powers conferred and duties imposed on the District Judges by the Act of April 1, 1878, did not come within the constitutional inhibition.

STARE DECISIS—CONSTITUTIONAL LAW.—The exposition of the Constitution by the highest court in existence under it, with regard to laws passed while it was in force, should be accepted by the present court without regard to its own views as to the correctness or incorrectness of the doctrine.

APPLICATION for writ of mandamus.

The prayer of the petition was that a writ of mandate issue out of this Court directed to said Board of Election Commis-

sioners of said City and County of San Francisco, and the members thereof, commanding them to proceed in compliance with the requirements of the Constitution and the laws to make suitable and legal preparation for the election on the seventh day of November, 1882, of the following municipal officers for the City and County of San Francisco, viz.:

Mayor, County Clerk, Attorney and Counselor, District Attorney, Sheriff, Recorder, Auditor, Treasurer, Assessor, Tax Collector, City and County Surveyor, Superintendent of Public Streets, Highways and Squares, Coroner, Public Administrator, Fire Commissioners, Police Commissioners, two Police Judges, twelve School Directors, twelve Supervisors, Superintendent of Common Schools, Chief of Police.

*John W. Carter*, for Plaintiff.

The office of Chief of Police of the City and County of San Francisco is elective. The Act concerning that office made it elective. (Cons. Act, Stat. 1856, § 6, p. 147.) The Act of 1878 (Sess. Acts, p. 879), by which it was undertaken to make that office no longer elective, is unconstitutional and void. (Const. of Cal. 1862, Art. 3; Art. 6, § 16; *Burgoyne's Case*, 5 Cal. 1; *Sanderson's Case*, 30 id. 160; *Myers* v. *Hamilton & Crane*, 9 P. C. L. J. 297.)

*L. Quint, T. B. Bishop*, and *W. T. Baggett*, also for Plaintiff.

The issue here raised cannot be said to be a new one. It has been before the Court, directly and indirectly, so often that it is scarcely possible for us to add anything to the arguments and authorities which have hitherto been made and filed in the other cases which would aid them in their deliberations. We believe there is now nothing to be done but for the Court to announce its judgment. (*In re Stuart*, 53 Cal. 745; *Barton* v. *Kalloch*, 56 id. 95; *Wood* v. *Election Commissioners*, 58 id. 561; *Treadwell* v. *Supervisors of Yolo County*, 8 P. C. L. J. 74.) Now, if we are correct in our conclusions there is but one question before the Court in this case to be discussed and determined, and that is, " Whether the Act of. March 7, 1881, applies to the City and County of San Francisco ?"

The Act of March 7, 1881, applies to the City and County

of San Francisco. The power of the Legislature to pass laws upon the subject of elections is found in Section 5 of Article xi., which declares that " the Legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of Boards of Supervisors, Sheriffs, County Clerks, District Attorneys, and such other township and municipal officers as public convenience may require, and shall prescribe their duties and fix their terms of office." There is no limitation or prohibition here. The language is: " Boards of Supervisors, Sheriffs, County Clerks, District Attorneys, and such other township and municipal officers as public convenience may require, and shall prescribe their duties and fix their terms of office." The authority is ample, and the whole power is entrusted to the Legislature to carry out this command of the Constitution—unless this power is trenched upon by the section immediately following (§ 6, Art. xi.). This section was before this Court in *Desmond* v. *Dunn* (55 Cal. 242), and it was there determined that the City and County of San Francisco having been incorporated and organized before the adoption of the New Constitution, the Consolidation Act could not be vacated or abrogated by any general law providing for the incorporation and organization of cities and towns until the electors of the city and county determined by majority vote to incorporate or organize under such general law. As we understand the decision, it only holds that no Act of the Legislature, though general and uniform in its scope and intent, which provides for the incorporation or organization of cities and towns will apply to any city or town incorporated or organized before the adoption of the Constitution of 1879. The decision does not control the question now before the Court. The Act now under consideration is not an Act, either in words or import, incorporating or organizing the City and County of San Francisco, or cities and towns generally. It is an Act merely changing the time of holding elections for the officers of all counties, cities and counties, and townships in the State—and as some of the members of this Court would say, by special command of the Constitution itself.

In other words, the Act of March 7, 1881, subjects this city and county to the control of a general and valid law

passed in pursuance of Section 5 of Article xi. of the Constitution.

*Alfred Clarke,* and *Harry T. Hammond,* for Defendant.

The present Board of Police Commissioners hold office under the provisions of the so-called "McCoppin Police Bill," statutes 1878, page 881. There is no statute authorizing an election of Police Commissioners; and without such authority an election by the people is invalid. (*Kenfield* v. *Irwin,* 52 Cal. 165; *People* v. *Porter,* 6 id. 26; *McKune* v. *Weller,* 11 id. 49; *People* v. *Martin,* 12 id. 409; *Westbrook* v. *Roseborough,* 14 id. 180.) The office of Chief of Police is not elective (Stats. 1877–8, p. 881), in *Wood* v. *Election Commissioners,* 58 Cal. 561, in which case it was held that the writ should issue to proceed with the election, " except the Chief of Police, which latter office, by the Act of April 1, 1878, ceased to be elective," as is shown by the writ issued in said case. The same question was before this Court in *People ex rel. Lenehan* v. *Tharp,* 8 P. C. L. J. 960.

*McClure & Dwinelle, Lloyd & Wood, Frank G. Newlands, W. E. Burnett,* also for Defendants.

The Consolidation Act remains intact until displaced pursuant to the provisions of Sections 6, 7, or 8 of Article xi., of the Constitution. The Consolidation Act consisted at the time of the adoption of the Constitution of the Original Consolidation Act as theretofore amended, and all laws supplemental thereto, and of the laws then existing in regard to the City and County of San Francisco.

Great stress is made upon the fact that this Court has decided that the law of 1881, being an amendment to Section 4109 of the Political Code, known as the "Hartson Act," is constitutional. And it is insisted that such decision is decisive of the question under consideration, to wit: the time provided by law for the election of municipal officers in the City and County of San Francisco.

While we acquiesce fully in the decision that the law is constitutional, and a law of a general nature, yet we contend and maintain that it was not intended to and does not act retrospectively upon laws existing at the time of its passage,

or in any manner abrogate them, except so far as the general laws of the State at large were to be affected thereby, and it has not nor was it intended to have, nor can it have without violating the provisions of the Constitution, any application to the election of municipal officers under the Consolidation Act in the City and County of San Francisco, or to any of the charters of the other cities of the State, until accepted by the people under the provisions of some one of the sections of the Constitution above cited.

We understand that this Court in the various decisions made in reference to the Consolidation Act, the City Charters of the other cities of the State, as well as its rulings in reference to elections for county and township officers to enunciate the principle which we have stated. (*Desmond* v. *Dunn*, 55 Cal. 250.)

The Hartson Act does not repeal the law fixing the time for holding elections in San Francisco.

In the opinion of Justice Sharpstein, in *Wood* v. *Election Commissioners*, this question is thoroughly examined, and counsel for defendants only desire to suggest one consideration, which probably did not occur to the learned justice when he was preparing his opinion.

Section 19 of the Political Code was enacted at a time when the Act fixing elections in San Francisco was in force, and by the terms of that section it is enacted:

"Nothing in the four Codes affects any of the provisions of the following statutes, but such statutes are recognized as continuing in force notwithstanding the provisions of the Code, except so far as they have been repealed or affected by subsequent laws.

"1. All Acts incorporating or chartering municipal corporations and Acts amending or supplementing such Acts.

"2. All Acts consolidating cities and counties, and Acts amending and supplementing such Acts." (Pol. C., § 19.)

Section 4109 of the Political Code, and the law regulating elections in San Francisco, were by the terms of Section 19 declared not in conflict, and were both in force, but made to regulate and control different things. Section 4109 regulated the election of county officers in different counties of the State outside of San Francisco, while the Act fixing such

election in San Francisco was continued in force, and the two were carried along without conflict and in harmony. The Legislature only amended Section 4109. It did not even undertake to pass a general law, but confined its work to an amendment of one section of the Code.

Nowhere in the "Hartson Act" can any reference be found to the law governing elections in San Francisco, and remembering the relative position occupied by the Code and by the special law at the time of the adoption of the Constitution, it must be evident that the Legislature had no intention to repeal the special law. It is certain that the repeal has not been directly attempted, and repeals by implication are not favored. (*People* v. *S. F. & S. J. R. R. Co.*, 28 Cal. 254.)

Ross, J.:

The question in this case is whether, by virtue of the Act of the Legislature approved March 7, 1881, and commonly known as the "Hartson Act," an election of the elective officers of the City and County of San Francisco is required to be held at the general election to occur in November of the present year.

That the Legislature intended the provisions of the Act to apply to San Francisco is not denied. Indeed, it could not be successfully denied, for it provides in terms for the election of all elective county, *city and county*, and township officers, with certain enumerated exceptions; and we know, judicially, that San Francisco is the only "city and county" within the State. The position of the respondents, however, is that the Consolidation Act of that city and county, which provides that the elections therein shall be held in the odd-numbered years, is unaffected by the provisions of the Act in question. And this, it is said, because of the provisions of the Constitution.

By Section 6 of Article xi. of that instrument it is provided that "corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization and classification, in proportion to population, of cities and towns, which laws may be altered, amended or repealed." This provision is clearly prospective. But the framers of the Constitution, recognizing the fact that there were municipal corporations

already in existence, provided in the same section as follows: "Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith." And by the succeeding section the provisions of the Constitution applicable to cities, and, also those applicable to counties, so far as not inconsistent or not prohibited to cities, are made applicable to consolidated city and county governments. If, therefore, the legislature has, by a general law, provided for the incorporation, organization and classification, in proportion to population, of cities and towns, or, if not, whenever it shall do so, the city and county of San Francisco may become organized under such general law whenever a majority of its electors voting at a general election shall so determine, and shall organize in conformity therewith. And until a majority of such electors do so determine, the Consolidation Act of the city and county can not be vacated or abrogated by any general act of incorporation. (*Desmond* v. *Dunn*, 55 Cal. 242.) But whether the city and county of San Francisco elects to organize under such general laws or to continue its existence under the Consolidation Act, it is subject to and controlled by general laws; for in the same section of the Constitution, in which the then existing city and town organizations are recognized, and the continuance of their existing charters permitted, it is declared that *"cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this Constitution, shall be subject to and controlled by general laws."*

The framers of the instrument meant something when they inserted this language in it, and we are not at liberty to hold that they did not mean what they said. Giving, as they did, to all cities and towns, and cities and counties, the right to organize under a general act of incorporation, which the Legislature was directed to pass, or to continue their existence under their existing charters, as they might elect, they nevertheless said that whichever course should be pursued, such cities and towns, and cities and counties, should be subject to and controlled by general laws—such general laws as should be passed by the Legislature other than those for the

"incorporation, organization and classification" of cities and towns. The Constitution has provided, in effect, that the city and county of San Francisco shall not be compelled to surrender its present charter for one it does not want; and, further, that its charter shall not be changed by special legislation, directly nor indirectly, under the guise of laws relating to cities, or cities and counties, containing a population of more than one hundred thousand inhabitants. At the same time, recognizing the fact that the city and county of San Francisco remains a subdivision of the State, the Constitution has said, in effect, that it, as well as all other cities and towns heretofore or hereafter organized, shall be subject to and controlled by such general laws as the Legislature shall enact other than those for the incorporation, organization and classification, in proportion to population, of cities and towns. We do not perceive the danger suggested by counsel for respondents, of the Consolidation Act being "eaten away" by such legislation. It can not, as already observed, be supplanted by a general Act of incorporation without the will of the people expressed at the. polls, nor can it be affected by special legislation; and it is not probable that such *general* laws as the Legislature may enact in conflict with its provisions will seriously affect it. But be that as it may, the Constitution has expressly declared that it shall be subject to and controlled by such laws. Such a law, in our opinion, is the Hartson Act, which simply provides for a uniform system of elections for the elective county, city and county, and township officers in the State on the even-numbered years, commencing in the year 1882.

It is unnecessary here to speak of the further provision contained in Section 8 of Article xi., giving to any city containing a population of more than one hundred thousand inhabitants authority to frame a charter for its own government, consistent with and subject to the Constitution and laws of this State, by causing a Board of fifteen freeholders to be elected to prepare and propose a charter, etc.

With respect to the offices of Police Commissioners and Chief of Police, we are of opinion that the doctrine of the case of *People* v. *Provines,* 34 Cal. 520, establishes the validity

of the Act of the Legislature approved April 1, 1878. By that Act the judges of the late Fifteenth, Twelfth, and Fourth Judicial Districts of the State were empowered and required to meet and choose three citizens of the City and County of San Francisco, householders in good repute, without respect to their politics, who, together with the Chief of Police, were constituted the Board of Police Commissioners for said city and county. The Act prescribed the powers and duties of the Board, and further provided that from and after the official term of the then Chief of Police, his office should "cease to be elective, and shall be filled by the Commissioners, whose appointment is herein provided for."

The objection urged to the Act is that the judicial officers of the State could not be charged with the duties or powers prescribed, because of the Third Article of the then existing Constitution, which was in these words: "The powers of the government of the State of California shall be divided into three separate departments—the Legislative, the Executive, and Judicial—and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others except in the cases hereinafter expressly directed or permitted."

In *People* v. *Provines*, the Court reviewed all of the cases in this Court in which this Article of the Constitution was under consideration, from and including *Burgoyne's Case* in the fifth to and including *Sanderson's* in the thirtieth of California Reports, "for the double purpose," as expressed by the Court, "of ascertaining precisely what has been said in relation to the present question, and of stating our conclusions in relation to the soundness of each case, in order that there may be, hereafter, no doubt as to which are to be regarded as law, and which not." And the conclusion of the Court in *Provines' Case* was, that the departments of which the Constitution speaks, "and in respect to which it provides that no person employed in one shall be employed in either of the other two, are the Departments of the State Government, as expressly defined and limited in the Constitution; and its meaning is, that no member of the Legislative Department, as there defined, shall at the same time be a member of the Executive or Judicial Departments, as there defined, and *vice*

*versa.* That is to say, no judicial officer shall be Governor, Lieutenant-governor, Secretary of State, Controller, Treasurer, Attorney-general, or Surveyor-general, all of whom, and none others, in the sense of the third Article of the Constitution, belong to and constitute the Executive Department of the Government; or a member of the Senate or Assembly, which two bodies, and none other, in the sense of the third Article of the Constitution, constitute the Legislative Department. So of each officer of the Executive Department—he cannot belong to the Judicial or Legislative Department. That is to say, he can hold no judicial office, nor the office of Senator or member of the Assembly. And so of Senators and members of the Assembly—they can hold no judicial or executive offices comprised within the Executive and Judicial Departments, as defined in Articles v. and vi. In short, the third Article of the Constitution means that the powers of the *State* Government, not the local governments thereafter to be created by the Legislature, shall be divided into three departments, and that the members of one department shall have no part or lot in the management of the affairs of either of the other departments, 'except in the cases hereinafter expressly directed or permitted.'"

As thus expounded, it is obvious that the powers conferred and duties imposed on the District Judges by the Act of April 1, 1878, did not come within the constitutional inhibition. This exposition of the Constitution by the highest Court in existence under it, and acted on by the Legislature, should be accepted by us in regard to laws so passed, without regard to our own views in respect to the correctness or incorrectness of the doctrine. It results that the Police Commissioners and Chief of Police are not elective officers.

Demurrer overruled.

Thornton, J., and Morrison, C. J., concurred.

McKee, J., concurred in the judgment.

Myrick, J., concurring:

In dissenting from the judgments of the Court in *Barton* v. *Kalloch*, 56 Cal. 95, and *Wood* v. *Election Commissioners*,

58 Cal. 561, and in concurring in the judgment in *Tread-well* v. *Supervisors*, 8 P. C. L. J. 74, I had occasion to express my views as to the force and effect of the Constitution of 1879 in controlling elections and terms of office throughout the State. I see no reason for changing the views then expressed. I thought then, and I think now, that by the Constitution all elections for all persons to be elected to office by the people are to be held in November of the even numbered years, and that the terms of office are to commence in January, following; that this is the uniform rule throughout the State, including the City and County of San Francisco; and that in regard to elections, as well as in regard to some other matters (*McDonald* v. *Patterson*, 54 Cal. 245), the Consolidation Act of the city and county is to give place to the general rule prescribed. I therefore concur in the judgment.

SHARPSTEIN, J., dissenting:

I dissent. I think, for reasons set forth in the opinions which I delivered in *Desmond* v. *Dunn*, 55 Cal. 242, and *Wood* v. *Election Commissioners*, 58 Cal. 561, and in the dissenting opinion of Mr. Justice McKinstry in *Donahue* v. *Graham*, 10 P. C. L. J. 37, that the Act commonly known as "the Hartson Act" neither amends nor repeals that clause of the Act of incorporation of the City and County of San Francisco which fixes the times of holding elections for the election of officers of said city and county.

1. Because it does not purport to amend or repeal any provision of said Act of incorporation, but on the contrary, purports to be an amendment of a section of the Political Code which has no reference whatever to said municipal corporation. And, "it is a principle of very extensive operation that statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities." (1 Dillon on Municipal Corporations, Sec. 87; *Stonington S. Bank* v. *Davis*, 1 McCarter, 286; *State ex rel.* v. *The Governor*, 1 Dutch. 331; *State* v. *Clarke*, 1 id. 54; *State* v. *Branin*, 3 Zab. 484; *Walworth Co.* v. *Whitewater*, 17 Wis. 193; *Janesville* v. *Markoe*, 18 Wis. 350.)

2. The Political Code expressly declares that nothing in it affects any Act consolidating cities and counties, or acts

amending or supplementing such acts.   And it is a well set-
tled rule of construction that an amendment to a law is to be
construed as to matters arising after its passage, precisely as
it would be had it originally formed a part of the act amended.
If the section of the Code which is amended by the Hartson
Act, had read before such amendment as it now reads, I do
not think it would be claimed that it applied to the City and
County of San Francisco.

3. The last clause of Section 6 of Article xi. of the Consti-
tution, which is mainly relied upon to support the contention
that the Hartson Act applies to the City and County of San
Francisco, does not, in my judgment, lend any support to that
position.   For the clause immediately preceding it in the
same section provides that "cities and towns heretofore or-
ganized or incorporated may become organized under such
general laws whenever a majority of the electors voting at a
general election shall so determine."   Now the Constitution
declares that the Legislature, by *general laws*, shall provide
for the incorporation of cities and towns, but that such gen-
eral laws shall not apply to cities and towns organized before
the adoption of the Constitution, unless a majority of the elec-
tors voting at a general election should so determine, and yet
it is insisted that a charter of a city incorporated before the
adoption of the Constitution may be changed by a general
Act, which purports to be an amendment of another general
Act which has no reference to any city or city and county.
It must be admitted, I think, that if the Legislature had
passed a general law for the incorporation of cities and cities
and counties, and had inserted in it a provision that elections
for municipal officers should be held on the day specified in
the Hartson Act for holding elections, it would not apply to
the City and County of San Francisco until a majority of the
voters, voting at a general election, should so determine.   And
yet it would be a general law which would take immediate
effect in all cities or cities and counties organized after the
adoption of the Constitution.   It is therefore clear to my
mind that when the Constitution declares that cities organ-
ized before its adoption shall be subject to and controlled by
general laws, it means as to matters not specially provided for
in charters which existed at the date of the adoption of the

Constitution.   Otherwise they would be subject to and controlled by general laws passed for the incorporation of cities and towns, without having first voted to organize under such laws; and that was the contention of the plaintiff's attorney in *Desmond* v. *Dunn,* 55 Cal. 242.

But, as before remarked, these questions have been quite fully discussed in the opinions to which I have referred, and no useful purpose could be subserved by going over the same ground at this time.

McKINSTRY, J., concurred.