## SUPERVISORS OF WALWORTH COUNTY vs. VILLAGE OF WHITEWATER.

Although chap. 191 (secs. 1 and 9), R. S., 1858, repeals all acts and parts of acts the subjects of which are revised and re-enacted in that revision, or which are repugnant to its provisions, this must be construed as referring to general statutes, and not as repealing all provisions of village and city charters, previously enacted, which are in conflict with the general statutes contained in said revision.

The charter of the village of Whitewater, enacted in 1858, (Pr. Laws of 1858, ch. 164, sec. 17, subd. 19,) provided that the village authorities should have the exclusive right to grant licenses for selling spirituous liquors in said village; that the sum paid for such license should not be less than that fixed by the laws of the state; and that the village treasurer should annually pay to the county treasurer ten dollars for each license so granted, which should be in full for all license money required to be paid by said village to the county treasurer. By

the general statute then in force (ch. 90, Laws of 1855), the village would have been required to pay the county *all* moneys derived from such licenses; and this general statute was subsequently re-enacted in the revision of that year. Ch. 35, sec. 16. *Held*, that the provision of the charter is still in force.

APPEAL from the Circuit Court for *Walworth* County.

The case is stated in the opinion of the court. Judgment for the plaintiffs.

*Edson Kellogg*, for appellant.

*N. S. Murphy*, for respondents.

*By the Court*, COLE, J. This action grows out of a claim made by Walworth county against the village of Whitewater for moneys which the village has received for licenses granted under its charter for the sale of spirituous liquors. In 1855 the legislature passed an act amendatory of the license law of 1851, by which it was provided that all moneys derived from licenses granted by towns, cities and villages, in the several counties in the state, should be paid by the treasurers of said towns, cities and villages, into the county treasury, and be applied solely for the purpose of defraying the pauper expenses of said counties in which the distinction between county and town poor had been abolished. Chap. 90, Gen. Laws of 1855. Walworth county abolished all distinction between town and county poor in 1852, and since then all paupers in that county are treated as county paupers. In 1858 the legislature incorporated the village of Whitewater, and, among other provisions, declared that the village authorities should have the exclusive power to grant licenses for selling spirituous liquors within the limits of the village; that the sum to be paid for such licenses should not be less than the sum fixed by the laws of the state; and that the village treasurer should annually pay to the county treasurer the sum of ten dollars for each license so granted, which should be in full of all license money required to be paid by the village of Whitewater to the county treasurer. Subd. 19, section 17, chap. 164, Priv. Laws of 1858.

In the revision of 1859, the original license law of 1851, with the amendatory act of 1855, was incorporated into our present statutes; and this case turns entirely upon the question as to what effect the re-enactment of those provisions of law in the statutes has upon the provision of the charter of the village before referred to. On the one hand it is claimed that such re-enactment does not at all affect the charter, while on the other it is insisted that it virtually repeals the charter, and that the village has no authority to retain any money whatever received by it for liquor license.

It is indisputable that, before the revision, the village, under its charter, had a clear right to retain all license moneys, after paying to the county ten dollars on each license granted, and that consequently, so far as that village was concerned, the law of 1855 was changed or modified. Was this right taken away by the subsequent passage of the revised statutes? We think it was not. It is not contended, we believe, that there is anything in the revised statutes directly repealing the provision of the charter which enabled the village to retain the license money, but it is said such repeal was effected by necessary implication. The whole subject of the excise law, it is said, was revised and re-enacted in the revised statutes, and this fact, taken in connection with the language used in different sections of the repealing chapter, must operate as a repeal of the provision of the charter. It is true, as already observed, that the excise law of 1851, with the amendatory act of 1855, was re-enacted. And the last clause of sec. 1, chap. 191 (the repealing chapter), in effect repeals all acts and parts of acts the subjects whereof are revised and re-enacted in the revised statutes or which are repugnant to the provisions therein contained; while, by the 9th section of the same chapter, it is declared that in addition to the several acts thereinbefore enumerated, all acts and parts of acts passed previous to the then present session of the legislature, the subjects whereof were revised or

compiled, and re-enacted in the revised statutes, as well as other such prior acts and parts of acts the provisions of which were repugnant to the provisions contained in the revised statutes, were, with the limitations therein named, repealed.   But notwithstanding the use of this comprehensive language in the repealing chapter, we hardly think that by it the legislature intended to repeal all provisions of the various city and village charters in the state, which might be in conflict with the general statutes.   The design of the legislature in making the revision is very clearly expressed in the acts authorizing the appointment of the commis-missioners and prescribing their duties.   The duty of the commissioners was "to collect, compile and digest the general laws of the state for the purpose of preparing a new edition of such laws for publication," and to prepare such amendments as they might think proper.   Chapters 71 and 126, Laws of 1856.   The revision was doubtless intended to embrace a collection and compilation of those general statutes which operated throughout the state and concerned the people at large, and this object must be kept in view when we are construing the repealing chapter.   And as a matter of fact, it was this class of statutes which was compiled and re-enacted, and which was the subject before the legislature.   There would therefore seem to be a manifest propriety in construing the language used in the repealing sections already cited, with reference to that character of laws which were re-enacted and to which the legislature doubtless intended it should apply.   The legislature were compiling and re-enacting those general provisions of law which antecedently to the revision were found in the various volumes of session laws which had been published. They were not dealing with the charters of the different cities and villages in the state, and therefore it was not a conflict between the provisions of such charters and the revised statutes which they attempted to avoid.   For though the expression "all other acts and parts of acts," &c., would appear to be

sufficiently extensive to include every repugnant provision of law wherever found, yet clearly the legislature did not intend it should have that broad significance ; otherwise there would have been no occasion for passing section 14. See amendment of this section 14, found in chap. 66, Laws of 1859. Because that section expressly declares that all laws contained in the revision should apply to and be in force in every city in the state, any provision in the charter of such city to the contrary notwithstanding ; a section entirely useless unless some restriction is placed upon the repealing clauses which we have been considering. See *Taylor vs. Delaney*, 2 Caines' Cases, 143; *Hughes vs. Farrar*, 45 Maine, 72.

From these considerations we are of the opinion that the subdivision of the charter which enables the village to retain all the license moneys after paying over to the county ten dollars on each license granted, is still in force.

The judgment of the circuit court is therefore reversed, and the cause remanded with directions to dismiss the complaint.