## CITY OF JANESVILLE VS. MARKOE.

The general repealing clauses of secs. 1 and 9, chap. 191, R. S., do not apply to the provisions of city charters. *Supervisors of Walworth County v. The Village of Whitewater*, 17 Wis., 193, followed.

The special provisions of the charter of the city of Janesville (approved March 25, 1858), which authorized the circuit court, on the filing of certain papers, to enter judgments against certain lands in said city for delinquent taxes, and empowered the treasurer to sell the lands for the amount of said judgments upon an order of the court, are still in force, and were not repealed by the subsequent passage of chap 18, R. S. *Kellogg v. The City of Oshkosh*, 14 Wis., 693, distinguished.

Where lands included within the limits of a city had been platted into blocks and lots as an addition to said city, and the plat recorded, and the lands described in the tax lists and assessment rolls, for a number of years, with reference to such plat, and the taxes paid thereon by the person to whom they were assessed. *Held*, in a proceeding under the charter to take judgment against the land for delinquent taxes of 1863, that the description of said land in the assessment rolls and tax list of that year with reference to said plat, was sufficient, and judgment was properly rendered for the sale of it for said delinquent tax, even if

said plat was not made by the actual proprietor of the land, and was not entitled to be recorded, and said proprietor had never paid the taxes upon the land, but they had been paid by another person claiming title.

It is the duty of the assessor of lands within the corporate limits of a city, to assess them at their true value, whether they are used for farming purposes or subdivided into lots for building purposes.

APPEAL from the Circuit Court for *Rock* County.

The treasurer of the *City of Janesville*, in December, 1863, returned to the circuit court for Rock county a list of the lands in said city upon which the taxes of that year had not been paid, and applied to the court for judgment against said lands for the amount of the taxes, &c., as prescribed in sec. 5, ch. 7 of the city charter, approved March 25, 1858 (Priv. & L. Laws of 1858, ch. 108, p. 246). The report included certain lands therein described as lots and blocks in "Smith's Addition to the City of Janesville;" and *Hartman Markoe* filed objections to the entry of judgment against said lands, on the ground that they were a part of the south-east quarter of sec. 35, T. 3 N., R. 12 E., of which (with certain exceptions not including said lands) he was the owner; that there was no such plat of lands legally existing as "Smith's Addition to the City of Janesville," nor any other legal plat of blocks and lots on said quarter section; and that there was no statute in force authorizing such a proceeding for judgment against delinquent lands. On a trial of the issues thus raised, the court found the following facts: That from 1842 to June 1, 1846, said quarter section was the property in fee of Ann M. C. Smith, and was assessed to her, and taxes levied thereon, which remained unpaid, and they were returned as delinquent; that on the 13th of April, 1847, said quarter section was sold for taxes, and the defendant *Markoe* became, in 1848, assignee of the tax certificate; that a tax deed was executed to him November 29, 1859, and duly acknowledged and recorded the same day; that under this deed *Markoe* claims said quarter section (except certain parcels not affected by the controversy), and from the date last mentioned had, by his tenants, occupied the same; that some

of said land had been let by *Markoe*, through his agent in said city, for farming purposes, and other parts thereof for "shanty sites and residences," but never by lots and blocks as platted lands; that previous to the assessment of 1863, *Markoe's* agent applied to the assessors, exhibiting to them the deed aforesaid, to have said lands assessed as farming lands, which they declined to do; that in October, 1853, A. Hyatt Smith and said Ann M. C. Smith (who was the wife of the former) platted said quarter section and caused it to be surveyed in blocks subdivided into lots, except certain parts thereof which are not here in question; that the plat so made was acknowledged by said A. Hyatt Smith and Ann M. C. Smith, and recorded October 20, 1853; that the lands were designated on said plat as "Smith's Addition to the City of Janesville," and were thereafter known by that name, and were in all subsequent years assessed to said Ann M. C. Smith by blocks and lots in accordance with said plat; and that the taxes thereon had been paid by said Ann M. C. Smith up to 1860, since which date no taxes had been paid thereon by any one.—Upon these facts the court held that the tax was not invalid by reason of the manner in which the lands were described in the assessment roll and tax list; but it also held that there was no existing statute authorizing the plaintiff's proceeding to obtain judgment against said land, and made an order accordingly, denying the motion for such judgment. The defendant excepted to the first ruling above mentioned, and the plaintiff to the second; and both parties appealed.

*J. W. D. Parker*, City Attorney, for the plaintiff, cited *Supervisors of Walworth County v. Village of Watertown*, 17 Wis., 193. As to the objection that the lands had never been legally platted, he argued that the conduct of the defendant in omitting to take a deed from the county from 1848 to 1859, in permitting the original owner to plat the land and have the plat recorded, and in suffering the land to be taxed by blocks and lots for ten years, without objection, estopped him from

denying the binding force of those acts of the former owner, so far at least as they affected proceedings of the city for the assessment and collection of taxes.

*A. Hyatt Smith*, for defendant, argued that the provisions in secs. 5–7, ch. 7 of the city charter, as found in ch. 108, Pr. & L. Laws of 1858, for the entry of judgment against lands for delinquent taxes, were repealed by chap. 18 and sec. 14, ch. 191, R. S., citing *Kellogg v. The City of Oshkosh*, 14 Wis., 623. He also contended that the lands in question were not subject to taxation as city lots, but only as farming lands, 1. Because the defendant's lien upon the lands was perfected before the plat was made (R. S. 1839, p. 46, § 14, and p. 50, § 29). 2. Because the plaintiff was estopped from setting up the plat, by the tax deed executed in 1859, having thereby conveyed the lands by the U. S. land office description.

*By the Court*, COLE, J. This case presents another of those perplexing questions growing out of the recent revision, and as to how far the repealing chapter 191 abrogates all provisions in city charters inconsistent with the general laws re-enacted. By special provisions in the charter of the city of Janesville, approved March 25, 1858, the circuit court is authorized, on the filing of the report of the city treasurer with the clerk of said court, together with certain affidavits there named, to enter judgments against lands for delinquent taxes and charges ; and the treasurer sells the lands against which these judgments are rendered, on an order of court, in very much the same manner as a sheriff sells lands on an execution. When the city treasurer, proceeding under these provisions of the charter, applied to the circuit court for judgment against certain lots and parcels of land belonging to the respondent, for the amount of unpaid taxes levied on them by the city authorities for city purposes for the year 1863, the circuit court denied the application, on the ground that there was no existing statute authorizing the proceeding. In other words, the court held

that these special provisions in the charter for enforcing the collection of delinquent taxes, had been superseded or abrogated by the Revised Statutes. By the general system adopted by the Revised Statutes, delinquent lands are reported by the town treasurers to the county authorities for sale. Should that have been done in this case by the city treasurer? Or are the provisions of the charter upon this subject still in force?

In the case of the *Supervisors of Walworth County v. The Village of Whitewater*, 17 Wis., 193, quite an analogous point was presented. The question in that case was, how far the provisions of the village charter upon the subject of granting licenses for the sale of ardent spirits, and the disposition of the money arising therefrom, had been superseded or abrogated by the re-enactment of the excise laws and the language used in the various sections of the repealing chapter. And we there held that, while the language in the last clause of section 1, chap. 191, and section 9, was sufficiently comprehensive to include any repugnant provision of law wherever found, yet we would not assume that the legislature intended by it to repeal all provisions of the various city and village charters in the state, which might be in conflict with the general statutes. We thought the language must have some limitation, and be held to apply to those repugnant provisions in that character of laws which the legislature was revising, found in the various session laws published prior to 1858. And this intention was the more manifest from the fact that the legislature deemed it necessary to adopt section 14, which expressly declared that all laws contained in the revision of the statutes should apply to and be in force and effect in each and every city in the state, any provision in the charter of any such city to the contrary notwithstanding; a provision of law entirely useless and unnecessary unless the view we had taken of the former sections of this chapter was correct. This construction of those sections likewise derives almost irresistible force from the subse-

quent amendment of section 14 so as to make it read that " all laws contained in this revision of the statutes shall apply to and be in force and effect in each and every city in this state, *so far as the same are applicable, and not inconsistent with the charter of any such city*" (chap. 66, Laws of 1859, p. 73); thus showing that it was the understanding of the legislature that it was by virtue of section 14 alone that the revised statutes were made to apply to cities, and not because all repugnant provisions in their charters had been repealed by the language previously used. We are therefore inclined to the opinion that the special provisions in the charter of the city of Janesville, in respect to the collection of delinquent taxes by means of a judgment and order of the court, are still in force.

At first glance this result might seem inconsistent with the decision in *Kellogg v. The City of Oshkosh*, 14 Wis., 623 ; but a moment's examination will show that it is not. In the case of Kellogg, one question presented was, whether the provisions of the city charter of Oshkosh, in regard to the assessment and equalization of taxes, had been superseded by chap. 115, Laws of 1858. And it was held that they had been. That this conclusion is correct, is very clear. In the first place, chap. 115, in regard to the assessment and equalization of taxes, is general, and is in terms made expressly applicable to cities. See section 20 of the act, R. S. 1858, page 245. Further, the last section (R. S., p. 248, sec. 31) repeals all acts or parts of acts in conflict with its provisions. Besides, the taxes, the validity of which was questioned in this case, were assessed and equalized in 1858, and before the revision with the repealing chapter took effect. Sec. 1, chap. 191, R. S. These circumstances materially distinguish the present case from that of *Kellogg v. The City of Oshkosh*, and of course render that decision entirely inapplicable. There is no general statute in respect to the collection of delinquent taxes by sale of the lands, which, by its terms, is made applicable to cities, as was the case in chap. 115. It is true, there is a general system provid-

ed in chap. 18, R. S., for the collection of delinquent taxes by the sale of the lands upon which they are assessed. But it is declared that the provisions of that chapter relative to towns shall be construed as applying to cities or wards, where the same are applicable, *unless otherwise provided.* Sec. 162, p. 234. Where it is otherwise provided in city charters, of course it is not intended that the provisions of that chapter relative to towns should apply.

Upon the other branch of the case we would say that we consider the description of the property by lots and blocks on tho assessment roll as sufficient. Assuming that there never had been a legal, valid plat of the lands by the owner, yet the plat which was made would be sufficient for the purpose of assessment and taxation. The lands could at once be described and identified by this plat, and thus the property sold be readily ascertained. It is said that it is a matter of importance to the owner whether his property is taxed as farming lands or city lots. We suppose it the duty of the assessor to list the lands at their true value, regardless of the purpose for which they were used. He could not lawfully make any discrimination between those used for farming purposes and those appropriated for building lots. *Knowlton v. Supervisors of Rock Co.,* 9 Wis., 410. If the property had been listed for taxation a number of years by lots and blocks, the assessor was authorized in describing them upon the tax roll in this manner, whether there was any irregularity in making and executing the original plat or not.

The order of the circuit court is reversed, and the cause remanded with directions to render judgment against the lands of respondent according to the provisions of the city charter.