SMITH v. STROTHER, Auditor, etc.*

No. 11,049; August 27, 1885.

7 Pac. 801.

Shorthand Reporters—Constitutionality of Act of March 21, 1885.—California act of March 21, 1885, relative to compensation of official shorthand reporters, considered, and held that the act was not unconstitutional, nor a delegation of power to the judiciary of legislating in regard to the matter, nor in violation of the county government bill, requiring a uniformity in county governments, nor in violation of article 11, section 6 of the constitution.

APPEAL from Superior Court, City and County of San Francisco.

Wm. M. Pierson and A. L. Hart for appellant; John L. Love for respondent.

ROSS, J.—The last legislature passed an act, approved March 21, 1885, entitled "An act to amend section 274 of an act entitled 'An act to establish a Civil Code of Procedure,' relative to the compensation of court reporters," by which it is provided that the official reporter shall receive as compensation for his services a monthly salary, to be fixed by the judge, by an order duly entered on the minutes of the court, which salary shall be paid out of the treasury of the county in the same manner and at the same time as the salaries of county officers, with a proviso to the effect that such salary shall not exceed three hundred dollars per month in counties having a population of one hundred thousand and over, and shall not exceed two hundred and seventy-five dollars per month in counties having a population less than one hundred thousand and exceeding fifty thousand and so on to and including counties having a population less than five thousand, in which the maximum is fixed at seventy-five dollars per month. The act contains other provisions not important to mention, and further provides that "in civil cases, in which the testimony is taken down by the official reporter, each party shall pay a per diem of two dollars and fifty cents before judgment

*For subsequent opinion in bank, see 68 Cal. 194, 8 Pac. 852.

or verdict therein is entered, and where the testimony is transcribed, the party or parties ordering it shall pay ten cents per folio for such transcription on delivery thereof; said per diem and transcription fees to be paid to the clerk of the court, and by him paid into the treasury of the county, and such portion as shall be paid by the prevailing party may be taxed as costs in the case.''

The act is claimed to be violative of the constitution in three respects: First, as ''a delegation of legislative power to the judiciary''; second, ''in violation of the constitutional provision requiring a uniform system of county governments''; and, third, ''because it imposes a new set of officials upon the people, in contravention of section 6 of article 11 of the constitution.''   Of course, we have nothing to do with the policy of the law, and it is our duty to sustain it, unless we can see clearly that it is in conflict with the paramount law of the state.   And this we cannot do.   In so far as the right to confer upon the judges the power and duty of fixing the compensation of reporters is concerned, the provisions of the act in question are similar to those of all of the former statutes upon the subject, commencing with the act of May 17, 1861: Stats. 1861, p. 497.   Immediately prior to the adoption of the codes, the law with respect to phonographic reporters of the courts in San Francisco was contained in the act of March 13, 1866 (Stats. 1865–66, p. 232), and in the act of March 28, 1868 (Stats. 1867–68, p. 425).   Each of those statutes, as well as the provisions of the Code of Civil Procedure, authorized the judge to fix the compensation of the reporter in certain cases.   And in Ex parte Reis, 64 Cal. 234, 30 Pac. 806, it was said that whether the acts of 1866 and 1868 or the provisions of the code were to control, the determination of that case was immaterial, as ''in either case, just before the adoption of the present constitution, the district court and county court could legally exercise the power of appointing a shorthand reporter, fix his compensation in criminal cases, and order such compensation to be paid, and it was the duty of the treasurer to pay the same upon the order of the court.''   It is true that the point now made was not made in Ex parte Reis, nor does the constitutionality of the various statutory provisions conferring upon the courts the power of fixing the compensation of reporters seem ever before to have been raised

in this state. In our opinion, the point is not well taken. Phonographic reporters are officers of the court in the same sense that sheriffs and clerks are. They constitute part of the judicial system of the state. The court may fix the fees of referees, commissioners, keepers, etc., in proper cases. Why not of reporters? We see in the act of doing so none of the characteristics of legislation. Nor does it in any manner contravene that provision of the constitution requiring the legislature to establish "a uniform system of county governments." Phonographic reporters are not county officers, and have nothing to do with county governments. They are, as already said, officers of the courts, and constitute a part of the judicial system of the state. Nor does the act in question "impose a new set of officials upon the people, in contravention of section 6 of article 11 of the state constitution." The "officials" referred to in the act of March 21, 1885, were already provided for by law: See Ex parte Reis, 64 Cal. 233, 30 Pac. 806, and the statutes there and hereinbefore referred to. Section 6 of article 11 of the constitution, cited in support of this point of respondent, reads:

"Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns; which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws."

The framers of the constitution, as we had occasion to say in Staude v. Election Commrs., 61 Cal. 320, meant something when they inserted the provision that "cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws," and we are not at liberty to hold that they did not mean what they said. Giving, as they did, to all cities and towns, and cities and counties, the right to organize under a general act of incorporation, which

the legislature was directed to pass, or to continue their existence under their existing charters, as they might elect, they nevertheless said that, whichever course should be pursued, such cities and towns, and cities and counties, should be subject to and controlled by general laws—such general laws as should be passed by the legislature other than those for the "incorporation, organization, and classification" of cities and towns. The constitution has provided, in effect, that the city and county of San Francisco shall not be compelled to surrender its present charter for one it does not want; and, further, that its charter shall not be changed by special legislation directly, nor indirectly under the guise of laws relating to cities, or cities and counties, containing a population of more than one hundred thousand inhabitants. At the same time, recognizing the fact that the city and county of San Francisco remains a subdivision of the state, the constitution has said, in effect, that it, as well as all other cities and towns heretofore or hereafter organized, shall be subject to and controlled by such general laws as the legislature shall enact, other than those for the incorporation, organization, and classification, in proportion to population, of cities and towns.

Judgment reversed and cause remanded, with directions to the court below to overrule the demurrer.

We concur: Thornton, J.; Morrison, C. J.

McKINSTRY, J., Concurring.—I concur in the judgment and in the conclusion that the act of March 21, 1885, is valid and operative.

I dissent: Myrick, J.