WILLIAM S. MOORE and another *vs.* CITY OF MINNEAPOLIS.

June 6, 1890.

**Police Regulation—Employment Agencies.**—The business of employment agencies *held* a proper subject of police regulation by the state.

**Same — City Ordinance not Repealed by General Law.**— The city council of the city of Minneapolis having been empowered by special act to license and regulate that business, and an ordinance having been adopted requiring licenses for the prosecution of that business, and prescribing regulations concerning it, it is *held* that a subsequent general law, requiring licenses to be procured by those conducting agencies for the employment of *men,* did not by implication repeal the special act.

**Same—Additional Fee for making out License.**—While the charging of a fee for making out a license, in addition to the prescribed license fee, was unauthorized, the complaint is *held* not to allege a cause of action for the recovery back of the excessive charge.

Appeal by plaintiffs from an order of the district court for Hennepin county, *Hicks,* J., presiding, sustaining a demurrer to the complaint.

*Steele & Rees,* for appellants.

*Robert D. Russell,* for respondent.

DICKINSON, J.[1] This is an appeal from an order sustaining a demurrer to the complaint. The action is for the recovery of the sum of $151, paid by the plaintiffs to the city of Minneapolis to procure a license to conduct an employment agency within the city for the procuring of employment for male persons. The ground upon which repayment is sought is that the city ordinance requiring

---

[1] Vanderburgh, J., was absent and took no part in this case.

licenses from the city for such purpose was invalid, for reasons to be hereafter considered, and that the plaintiffs paid the fee for such license under threats of arrest and prosecution if a license were not procured, the payment being claimed to have thus been made under duress.    The business was a proper subject of police regulation and control.    The nature of the business, and the character of those with whom the business is likely to be conducted, in point of intelligence, experience, and capacity for self-protection from fraudulent practices, are such that it might well be deemed necessary by the legislature, as a matter of proper police regulation, that, by means of a license system, dishonest and disreputable persons should, so far as possible, be excluded from the right to engage in the business, and that the conduct of the business be so regulated as to afford means for the detection of fraudulent practices and of redress for wrongs done.    The propriety of police regulation seems apparent when it is considered that, by means of such agencies, ignorant and credulous persons might easily be defrauded of their money under a mere pretence of employment to be afforded them in a distant part of the state, so that the fraud would not be discovered until the victim should have gone so far away as to be unlikely to trouble the fraudulent agent by prosecution.    Again, such business might be resorted to as a means of bringing girls into places unfit for their employment or presence.

The charter of the city authorized the city council, by ordinance, "to license and regulate    *    *    *    keepers of intelligence or employment offices, as well as all persons doing the business of seeking employment for others, or procuring or furnishing employes for others."    The charter further confers the power, among other things, to require all persons doing such business to keep for inspection records of their business, and to furnish to the persons with whom they deal written evidence of their transactions, and gives power to punish all kinds of unfair dealing.    Sp. Laws 1881, *c.* 76, *subc.* 4, § 5, subd. 1, as amended by Sp. Laws 1883, *c.* 3, § 10, p. 73.    The ordinance adopted under the authority of this law required applications for licenses to be passed upon by the city council, and prescribed certain regulations of the business, the propriety of which is not in question. It prescribed a license fee of $10 when the business was to be lim-

ited to the employment of females within the counties of Hennepin and Ramsey, and $150 when the business was to extend to the employment of males without territorial limits, or of females elsewhere than in the two counties named. It is contended that the special law conferring authority upon the city council relative to this subject was in effect repealed by the subsequent enactment of a general law, (Laws 1885, c. 205,) in which case the ordinance would cease to be of effect. The statute last referred to is general in its terms, but it relates only to the business of agencies for the employment of *men.* Persons engaging in that business are required to procure licenses therefor from the municipal council, if the business is to be carried on in a city or village, or from the county commissioners, if it is to be carried on in the country. A license fee of $100 is required to be paid, and a bond for $10,000 to be executed, whereupon the applicant "shall be entitled to such license;" and the licensee "may, while continuing to reside or maintain his office at the place mentioned in such license, prosecute his said business in any part of the state." No other regulation of the business is effected by this law. There is no declared repeal of inconsistent acts. We deem it unnecessary to consider the point made by the defendant that this act is void for uncertainty. Some of the distinctive features of the two acts should be particularly observed: (1) The special act relates to the employment of both males and females, while the general law relates only to the employment of "men." (2) Under the special law the license is limited to a period of one year, while under the general law it is not thus limited, and may extend to the period of the natural life of the licensee. (3) The special act gives the power to license and regulate, while the general law confers no authority to regulate the conduct of the business. (4) Under the special act, the council might doubtless refuse a license to an unfit applicant, but the general law seems to make the payment of the fee and the executing of the bond as prescribed the only conditions upon compliance with which he "shall be entitled to such license." The special act remains in force unless by implication merely the general law repealed it, and only so far as the latter act may be found inconsistent with the earlier can the latter be deemed to have been repealed. The special

act was of much wider scope than the other, and, if the general act be regarded as repealing so much of the special as relates to agencies for the employment of men, yet the provisions of the special act relating to the employment of females (and perhaps of *boys* also) still remain in force. Nor, so far as concerns that subject, is the ordinance passed in pursuance of the special law rendered inoperative.

Allowing both laws to have such effect within the city of Minneapolis,—the one as respects the employment of men and the other as to the employment of females,—we should have these results, in respect to the two classifications or branches of business: In one case the applicant (the special act and ordinance controlling) is to pay a license fee of $150 for a one year's license; to give a bond for $1,000; the license may be refused if the applicant is not a proper person to conduct the business; and the licensee is subject to the police regulations prescribed in the ordinance. In the other case, the applicant is to pay a smaller license fee ($100) for a license which may extend for the period of his natural life; he is to give a bond for $10,000; is entitled to a license, as it would seem, although he be of disreputable character; nor is he subject to the police regulations prescribed under the special law; and the general law prescribes no regulations beyond the mere license. While there may be reasons for some distinctions in the regulations which it might be deemed expedient to apply to such a business, depending upon the fact as to whether it is to relate to the employment of males or of females, the distinctions to which we have referred cannot well be deemed to have been intended to exist, based upon any such considerations. When allowing the later law to have effect as repealing or modifying an earlier is productive of such results, a reason is presented, in addition to the general rule that repeals by implication are not favored, for considering whether some other construction is not more likely to be in accordance with the intention of the legislature. It is hardly to be supposed that the legislature intended the subject of employment agencies within the city of Minneapolis to be so divided, and to be controlled by laws so different, if not incongruous; yet it is certain that the local law remains in force, at least as to agencies for the employment of females.

Again, it is to be considered that an intention on the part of the legislature that a law should have the effect to repeal or modify a prior act is less readily to be implied where the prior act is of a special nature,—as the provisions of a municipal charter, presumably enacted with regard to what was deemed expedient under particular circumstances, or in a particular locality,—than if the prior act were general. *McKenna* v. *Edmundstone*, 91 N. Y. 231, and cases cited; *Walworth Co.* v. *Village of Whitewater*, 17 Wis. 193; *City of Janesville* v. *Markoe*, 18 Wis. 350; *Brown* v. *County Commissioners*, 21 Pa. St. 37; *State* v. *Mayor, etc.*, 33 N. J. Law, 57; *Wood* v. *Election Comm'rs*, 58 Cal. 561; 1 Dill. Mun. Corp. § 87. The only possible way to avoid the results which we have referred to is to construe the general law as not intended to repeal the special act, or to affect its local operation, but as applicable in cities, villages, and elsewhere, where no such prior law was in force. This, we think, is the proper construction to be placed on the law.

It is not apparent from the complaint that the license fee prescribed by the ordinance was unreasonable. See *City of Mankato* v. *Fowler*, 32 Minn. 364, (20 N. W. Rep. 361;) *In re White, supra*, p. 250.

We do not understand that the charge of one dollar for the clerical work of issuing the license, in addition to the fee prescribed by the ordinance, was authorized; but we think the complaint hardly sufficient as a statement of a cause of action for the recovery of that sum. The allegations of the complaint as to duress and compulsory payment seem not to have been made with reference to the one dollar charged for the clerical work of making out the license. While the plaintiff complains that he was compelled to take out a license by threats of arrest and prosecution if he did not do so, it would seem that the cause of action set forth and relied upon was the invalidity of the ordinance, which is particularly alleged, rather than any unlawful exaction of the officer who may have issued the license.

Order affirmed.

NOTE. A motion for a reargument of this case was denied June 19, 1890.