(67 N. W. Rep. 291.)

---

STATE *ex rel* SCOVIL *vs*. WM. S. MOORHOUSE.

Opinion filed April 24th, 1896.

**Revised Code—Repeal of Revenue Law—District Assessors.**

> The broad language of the repealing act which went into effect with the Revised Codes must be so limited by the obvious purpose of the new revenue law as to leave unaffected those portions of chapter 132 of the Laws of 1890 as relate to the office of district assessors in unorganized townships.

Appeal from District Court, Burleigh County; *Winchester*, J.

Application by the State of North Dakota, on the relation of B. F. Scovil, against William S. Moorhouse, as auditor of the County of Burleigh, for mandamus. From a judgment denying the writ, plaintiff appeals.

Reversed.

*John F. Cowan, Atty. Gen.*, for appellant.

*Edward S. Allen, State's Atty.*, for respondent.

CORLISS, J. This cause involves a question of great moment to the state. We are, in effect, called upon to decide whether there exists within this commonwealth any revenue law whatever. The particular point presented is whether there is any machinery for assessing property in this state situated in those portions of the state in which there are no organized townships. But it is obvious that, if the reveue law which went into operation on the 1st of last January has made no provision for the assessment of property in those portions of the state, it is wholly void, as violative of that provision of the constitution which requires that all property of the state shall be taxed by uniform rule, according to its true value in money, except where the constitution prescribes a different rule. Section 176. The exceptions referred to would not authorize the exemption of property merely because of its location in an unorganized township. The question, therefore, before us is whether there is any valid revenue law in this state at all. It comes before us on appeal from a final judment in mandamus proceeding instituted by relator to compel the defendant, as auditor of Burleigh County, to furnish him (the relator,) as assessor of the second assessor's district in Burleigh County, with the necessary notices and blanks to enable him to discharge his duties as such assessor. The defendant denies the right of the relator to compel him (the defendant) to furnish the relator these notices and blanks, basing his denial on the proposition that there is no longer any such office as that of district assessor in this state. The term for which relator was elected has not expired; and therefore he is clearly entitled to the relief sought, unless it is true that the law creating the office of district assessor has been repealed. The act creating this office is chapter 132 of the Laws of 1890. When we turn to the Revised Codes, we discover in them a general repealing statute, embracing many laws; and among the acts there enumerated as repealed is this chapter 132 of the laws of 1890. Were we furnished with no other light on this subject, we could not escape the conclusion that that section of this chapter which creates the office of

district assessor, and provides for his election, etc., has been abrogated. But we must construe this blanket repealing clause in the light of the circumstances surrounding its enactment, and also in connection with other statutes passed at the same time as part of the general scheme of legislation of which this repealing statute was only a subordinate feature. It is evident that this repealing act was not specifically leveled at the abolition of the office of district assessor. The section of chapter 132 which relates to the office is one of more than a hundred sections of that chapter; and the only reference to the chapter itself in the repealing act is by use of the words and figures "chapter 132 of the Laws of 1890," buried in a mass of references to hundreds of other sections, chapters, and laws there declared to be repealed. To impute to the legislature an intent to repeal those parts of chapter 132 which provide for the office of district assessor, and regulate the election of such officer, etc., is to lay at its door the charge of enacting a law (the new revenue law) which could not be enforced in a large portion of the territory in which it is manifest that it was intended by the legislature that it should be operative. The most casual reading of this new revenue law makes it plain that the legislature proceeded on the theory that all the necessary machinery to assess property and levy and collect taxes in unorganized townships was entirely intact. Nearly every line of the revenue statute is a conclusive demonstration that it was not the purpose of the lawmaking power to render it 'mpossible to assess property and collect taxes in large portions of territory of the state. The law proceeds on the theory, from its opening sentence to its last provision, that all property in the state not lawfully exempted from taxation shall be assessed by a legal assessor. In many sections of the act explicit reference is made to district assessors, showing clearly that it was never the purpose of the legislature to repeal that portion of chapter 132 which related to the office of district assessor. Under the provisions of the Laws of 1890, the district assessor has jurisdiction to assess in all those unorganized town-

ships which lie within the same commissioner's district for which he was elected assessor. As contradistinguished from township districts, these assessors' districts are referred to as commissioner districts. In the following sections of the Revised Codes, these commissioner districts are distinctly recognized as existing, and the listing of property therein is specially provided for. Sections 1201, 1202, and 1203, Rev. Codes, read as follows: "The owner of range stock, including cattle, horses or sheep, or his agent, foreman or superintendent, shall list the same for purposes of assessment and taxation in the commissioner district or township in which he claims his home ranch for rounding and branding purposes, and where his herdsmen or employees are boarded and subsisted, regardless of where the cattle may range. If such owner of range stock, including horses, cattle or sheep, has at the time the assessment is made, no such home ranch, then such range stock shall be listed in the commissioner district or township in which the home ranch was situated at the last round-up and branding; provided, that any such stock, owned outside of this state, and ranging within this state, shall be assessed wherever and whenever found ranging within this state. When the home ranch of any owner of range stock is situated in an unorganized county of this state, such range stock shall be subject to taxation in the organized county to which it is attached for judicial purposes, and shall be listed and assessed by the assessor of the commissioner district or township lying in closest proximity to such home ranch." See, also, sections 1209 and 1212, Rev. Codes. In section 1191 both township and district assessors are named. But it is not on isolated provisions of the revenue law that we rest our decision. We hold that the purpose to keep alive the necessary machinery to enable property to be assessed and taxes to be collected in unorganized townships is so palpable that it must override the faint inference of a purpose to leave that territory wholly exempt from taxation, drawn from the fact that, in a vast mass of statutes enumerated as within the language of a repealing act, a brief reference to chapter 132 of

the Laws of 1890 is found, without any particular reference to the section of that chapter which contains the provision relating to the office of district assessor, etc. It is obvious that the broad letter of this repealing act is in conflict with the whole spirit and purpose of the revenue law passed at the same time. As both cannot stand, it is obvious that we must give effect to that which expresses the true legislative purpose. It is too plain for argument that one of the great purposes of the legislation was to provide for the assessment of property throughout the entire state. To give effect to that purpose, we must limit the broad language of the repealing act, so that it will not defeat such purpose. Not having made provision in the new revenue law for the office of district assessor, and yet having clearly evinced a purpose that property in such territory should be assessed, and having in terms referred to that office and the district over which the jurisdiction of a district assessor extended, it does not admit of doubt that it was never intended by the legislature that those provisions of chapter 132 relating to the office of district assessor, etc., should be repealed. To reach the contrary conclusion would be to impute to the legislature a deliberate intention to pass an unconstitutional law, for its violation of the state constitution would be palpable if it left a portion of the territory of the state without any legislation authorizing the levy and collection of taxes therein. Moreover, we must not ignore the public mischief which would result from such a construction of the statute as would defeat taxation, not only in these unorganized townships, but throughout the entire state. In a doubtful case, such consideration should have great weight; but we do not regard this case as at all doubtful.

The decision of the New York court of appeals in *Smith* v. *People*, 47 N. Y. 330, is directly in point. The question before the court was whether certain portions of certain laws passed in 1853 and 1857 had been repealed. The repealing statute was broad enough in terms to embrace the whole of such laws. It was as comprehensive as the repealing law involved in the case at bar.

On this subject the court said: "As there is no qualification or limitation annexed to the repealing clause, it is conceded that it is sufficient in terms to accomplish all that is claimed for it, and, literally interpreted, effectual'y abrogrates the laws of 1853 and 1857, reorganizing the criminal courts in the City of New York." But the court held that this sweeping provision of the repealing act must be limited, because other statutes made it manifest that it could not have been the purpose of the legislature wholly to abrogate these statutes, but on the contrary, it was the intent of that body to leave certain portions of them in force. Said the court: "The practical effect of a judgment giving full and literal effect to the repealing clause in the act of 1870 would be to annul all the proceedings in and judgments of both courts for the last two years, and the consequences would seriously affect the public as well as individuals. A statute should not be so construed as to work a public mischief, unless required by words of the most explicit and unequivocal import. *People* v. *Lambier*, 5 Denio, 9. In the construction of statutes, effect must be given to the intent of the legislature whenever it can be discerned, though such construction seem contrary to the letter of the statute. That intent must be primarily sought in the language of the statute; and if the words employed have a well understood meaning, are of themselves precise and unambiguous in most cases no more can be necessary than to expound them in their natural and ordinary sense. The words in such cases, ordinarily, best declare the intention of the legislature. Sussex Peerage Case, 11 Clark & F. 86; *Newall* v. *People*, 7 N. Y. 97; *McCluskey* v. *Cromwell*, 11 N. Y. 593. These rules are elementary, but it is equally well settled that words, absolute of themselves, and language the most broad and comprehensive, may be qualified and restricted by reference to other parts of the same statute in which they are used, and to the circumstances and facts existing at the time, and to which they relate or are applied. A literal interpretation of words in most common use, and having a well defined meaning as ordinarily used, would not unfrequently defeat, rather than accom-

plish, the intent of the party using them. If, in reading a statute
in connection with other statutes passed at or about the same
time, a doubt exists as to the force and effect the legislature
intended to give to particular terms,—that is, as to the meaning
which it was intended they should bear and have in the connec-
tion in which they are used,—it is also competent to refer to the
circumstances under which and the purposes for which a statute
is passed, to ascertain the intent of the legislature. * * * The
question whether a repeal of a prior statute, absolute in terms,
can be limited in its operation and effect for any reason, has fre-
quently arisen, and the decisions of the courts have been uniform
that while the language of the repealing clause must be accepted
as the expression of the will of the legislature, and effect given
to it according to its terms, unless it appears, although the
language of the appeal was general and unqualified, that it was
intended to be used in a qualified or limited sense, that whenever
that intent is discovered, effect must be given to it, as in the
interpretation of other acts. *Rex* v. *Rogers*, 10 East, 569; *Warren*
v. *Windle*, 3 East, 205. If the repeal of a statute is by express
and positive terms, and there is no legitimate evidence in or out
of the act of an intent to qualify and restrict the operation,—that
is, no limitation or qualification, express or implied,—the only
question is as to the effect of the repeal, and the rule is that, for
all purposes, the law repealed is as if it had never existed.
Miller's Case, 1 W. Bl. 451; *Butler* v. *Palmer*, 1 Hill, 324; *Maggs*
v. *Hunt*, 4 Bing, 212; *Surtees* v. *Ellison*, 9 Barn. & C. 750. A
clause in a statute purporting to repeal other statutes is subject
to the same rules of interpretation as other enactments, and the
intent must prevail over literal interpretation. One part of an
act of the legislature may be referred to in aid of the interpreta-
tion of other parts of the same act. So, in case of doubt or
uncertainty, acts in *pari materia*, passed before or after, and
whether repealed or unrepealed, may be referred to in order to
discern the intent of the legislature in the use of particular terms;
and within the same rule, and the reason of it, contemporaneous

legislation, although not precisely in *pari materia*, may be referred to for the same purpose. Statutes in *pari materia* relate to the same subject, the same person or thing, or the same class of persons or things, and are to be read together, for the reason that it is to be implied that a code of statutes relating to one subject is governed by the same spirit, and are intended to be harmonious and consistent. They are to be taken together as if they were one in law, as one statute. 1 Kent. Comm. 463; *Church* v. *Crocker*, 3 Mass. 21; *Mendon* v. *Worcester Co.*, 10 Pick. 235; *United Society* v. *Eagle Bank*, 7 Conn. 456; Bac. Abr. 'Statute,' I, 3; *McWilliams* v. *Adams*, 1 Macq. 120; *Rodgers* v. *Bradshaw*, 20 Johns. 735; *McCartee* v. *Society*, 9 Cow. 437. Statutes enacted at the same session of the legislature should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes in *pari materia*. Each is supposed to speak the mind of the same legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect, so as to give validity and effect to every other act passed at the same session." The court states its conclusion at page 341, in the following language: "The last act reflects light upon the first, and is a very significant indication that the legislature did not intend, by the comprehensive terms of repeal, to abrogate the organizing law of the criminal courts in New York, which had a place in the acts purporting in terms to be repealed, and did not suppose that the organization of these courts had been affected. Both acts can stand together by giving the repealing clause a qualified and restricted operation, in harmony with the evident intent of the legislature, and not otherwise." The principles which govern our decision in this case were recognized and applied by this court in *Trust Co.* v. *Whited*, 2 N. D. 82, (see pages 101 and 102 of the opinion,) 49 N. W. 318. The decisions in the New York case cited meet our full approval. To the same effect are *City of Janesville* v. *Markoe*, 18 Wis. 350; *Supervisors of Walworth Co.* v. *Village of Whitewater*, 17 Wis. 193. See, also, *State* v. *Miller*, 23 Wis. 634.

The judgment of the District Court is reversed, and that court is directed to enter a judgment awarding a peremptory writ of mandamus. All concur.