PEOPLE *v*. BRAZEE.

1. CONSTITUTIONAL LAW—TITLE OF ACT—EMPLOYMENT AGENCY.

The title of Act No. 301, Pub. Acts 1913, "An act to pro-
vide for the licensing, bonding and regulation of private
employment agencies, the limiting of the amount of the
fee charged," etc., also regulating and fixing a license fee
for such agencies, is sufficient under the State Constitu-
tion.

2. SAME—POLICE POWER—REGULATION OF BUSINESS.

The "police power" is said to be a power or organization
of a system of regulations tending to the health, order,
convenience, and comfort of the people and to the pre-
vention and punishment of injuries and offenses to the
public. It is the expression of an instinct of self-preserva-
tion and characteristic of every living creature, an in-
herent faculty and function of life, attributed to all self-
governing bodies as indispensable to their healthy exist-
ence and to the public welfare. It embraces all rules and
regulations for the protection of life and the security of
property.[1]

3. SAME—POWER OF REGULATION.

The business is one which justifies the exercise of the
police power to regulate or control it, since persons deal-
ing with them may be exposed to misfortunes from which
he cannot be adequately protected without such regulation.

4. SAME—AMOUNT OF LICENSE FEE.

The imposition of a license fee of $100 is not an oppres-
sive, arbitrary exaction so as to affect the validity of the
statute: the amount is within a lawful exercise of legis-
lative discretion.

5. SAME.

The commissioner of labor has authority to prorate the
annual fee for such portion of the period as a license may
cover.

---

[1] The question of police power to license employment agencies
is discussed in notes in 2 L. R. A. (N. S.) 859 and 21 L. R. A.
(N. S.) 263.

6. SAME—LOCAL LEGISLATION—GENERAL LAW.

It cannot be held that the provisions of the statute which limit the fee of $100 to cities of over 200,000 inhabitants renders the act unconstitutional as local legislation, notwithstanding that only one city exceeds the limit of population so named.

7. SAME—COMMISSIONER OF LABOR.

Since the legislature may lawfully delegate to boards or commissions the power to determine certain facts which are essential to the exercise of authority, it is within its prerogative to confer upon the commissioner of labor power to determine whether the licensee has violated any of the provisions of the statute.

Exceptions before sentence from the recorder's court of the city of Detroit; Connolly, J. Submitted November 5, 1914. (Docket No. 159.) Decided December 19, 1914.

Le Roy Brazee was convicted of violating the statute regulating employment agencies. Affirmed.

*Grant Fellows*, Attorney General, *David H. Crowley*, Assistant Attorney General, and *Allan H. Frazer*, Prosecuting Attorney, for the people.

*Proctor K. Owens*, for respondent.

BROOKE, J. Respondent stands convicted of a violation of the provisions of Act No. 301 of the Public Acts of 1913, relating to the licensing, bonding, and regulation of private employment agencies. The act provides:

"SECTION 1. No person, firm or corporation in this State shall open, operate or maintain a private employment agency where a fee is charged to persons seeking employment, without first obtaining a license for the same from the commissioner of labor, and the fee for such license shall be $25.00 per annum except in cities over 200,000 population, where it shall be $100.00 per annum. Every license shall be void after the thirty-first day of December of the year in which

it was issued. The form of the license shall be fixed by the commissioner of labor and it shall be nontransferable. The license may be revoked by the commissioner of labor whenever, in his judgment, after full hearing, the licensed agency shall have violated any of the provisions of this act. The commissioner of labor is hereby charged with the enforcement of the terms of this act and empowered to make such rules or regulations as are consistent with it and aid in its enforcement and he shall direct copies or excerpts of this act to be kept conspicuously posted in every licensed agency. The commissioner of labor shall turn into the State treasury all fees collected under this act."

Section 2 provides for a surety bond in the penal sum of $1,000. Section 3 requires the employment agency to keep certain records. Section 4 requires such agency to give receipts for fees paid. Section 5 provides for a limitation upon such fees and for their repayment under certain contingencies. Sections 6 and 7 prohibit certain practices. Section 8 provides for a penalty, which may be either fine or imprisonment.

Respondent avers that said act is unconstitutional and void, for many reasons which we find it unnecessary to enumerate at large in this opinion. It may be said, generally, that the claim of the respondent is:

(1) That the title of the act is insufficient.

(2) That the fee charged is a tax and as such lacks the equality or uniformity demanded by the Constitution.

(3) That it is unreasonable, oppressive, prohibitory, and not regulative.

(4) That it vests arbitrary, executive, legislative, and judicial power in the State labor commissioner to say whether any man may engage in this lawful business.

(5) That it is discriminatory class legislation.

Other reasons are urged, which we believe may fairly be considered as covered by those above set forth.

With reference to the first contention, we think it is sufficient to say that in our opinion the title is sufficient and does not offend section 21 of article 5 of the Constitution.

The other reasons urged for holding the act unconstitutional, with the exception of No. 4, may be treated together.

The "police power" is said to be a power or organization of a system of regulations tending to the health, order, convenience, and comfort of the people and to the prevention and punishment of injuries and offenses to the public. It is the expression of an instinct of self-preservation and characteristic of every living creature, an inherent faculty and function of life, attributed to all self-governing bodies as indispensable to their healthy existence and to the public welfare. It embraces all rules and regulations for the protection of life and the security of property. 28 Cyc. p. 692; 31 Cyc. p. 902. It has for its object the improvement of social and economic conditions affecting the community at large and collectively with a view to bring about "the greatest good of the greatest number." Courts have consistently and wisely declined to set any fixed limitations upon subjects calling for the exercise of this power. It is elastic and is exercised from time to time as varying social conditions demand correction.

This court has had frequent occasion to examine legislative enactments whose validity rests upon a proper exercise of this power. Among these are the following: With respect to meat dealers, *Ash* v. *People*, 11 Mich. 347 (83 Am. Dec. 740). Regulating the manufacture and sale of bread, *People* v. *Wagner*, 86 Mich. 594 (49 N. W. 609, 13 L. R. A. 286, 24 Am. St. Rep. 141). Regulating pawnbrokers, *City of Grand Rapids* v. *Braudy*, 105 Mich. 670 (64 N. W. 29, 32 L. R. A. 116, 55 Am. St. Rep. 472). Hawkers and

peddlers, *City of Muskegon* v. *Zeeryp*, 134 Mich. 181
(96 N. W. 502). Regulating the sale of goods in bulk,
*Musselman Grocer Co.* v. *Kidd, Dater & Price Co.*, 151
Mich. 478 (115 N. W. 409 [affirmed in 217 U. S. 461
(30 Sup. Ct. 606)].

It is the contention of counsel for respondent that
respondent is engaged in a lawful and useful occupa-
tion, and that in consequence thereof the legislature
was without power to regulate said business as it at-
tempted to do by means of the act in question. In
support of this position, the case of *People, ex rel.
Valentine*, v. *Berrien Circuit Judge*, 124 Mich. 664
(83 N. W. 594, 50 L. R. A. 493, 83 Am. St. Rep. 352),
is cited. It is there said:

"The legislature of this State is not empowered by
the Constitution to regulate contracts between its citi-
zens who are engaged in legitimate commercial busi-
ness, or to require any class of persons to pay a fee
for the right to carry on business, or to give a bond
to perform their contracts which other parties may
choose to make with them. The Constitution guaran-
tees to citizens the right to engage in lawful business,
unhampered by legislative restrictions, where no re-
strictions are required for the protection of the
public."

There can be no doubt of the soundness of the prin-
ciples enunciated in the foregoing quotation. The
point in issue is whether the business carried on by the
respondent is one which may properly be regulated
by the legislature through the exercise of the police
power, in the interests of the public.

This question was considered by the Supreme Court
of the United States in the case of *Williams* v. *Fears*,
179 U. S. 270 (21 Sup. Ct. 128). Mr. Chief Justice
FULLER, writing the opinion for the court there, says:

"It would seem, moreover, that the business itself
is of such nature and importance as to justify the
exercise of the police power in its regulation. We are

not dealing with single instances, but with a general business, and it is easy to see that if that business is not subject to regulation, the citizen may be exposed to misfortunes from which he might otherwise be legitimately protected. Nor does it appear to us that the objection of unlawful discrimination is tenable."

In the case of *Price* v. *People*, 193 Ill. 114 (61 N. E. 844, 55 L. R. A. 588, 86 Am. St. Rep. 306), the court had under consideration section 10 of an act of the general assembly entitled in part "for the regulating of private employment agencies." (Hurd's Rev. Stat. 1899, chap. 48, § 62.) This act provided for a license fee of $200, and the execution of a bond in the penal sum of $1,000. That court determined that the act contravened neither the State nor the Federal Constitution. It is there said:

"It is an attribute of sovereign power to enact laws for the exercise of such restraint and control over the citizen and his occupation as may be necessary to promote the health, safety, and welfare of society. This power is known as the police power. * * *

"That the public welfare demands legislation prescribing regulations and restrictions to protect against the evils of imposition and extortion which have manifested themselves in the conduct of private employment agencies is not controverted by counsel for plaintiff in error."

In that case, as in the case at bar, it was contended that the license fee of $200 was an oppressive arbitrary exaction. While affirming the right of the court to pass upon the reasonableness of the license fee exacted, it was held that, where the fee was imposed by an act of the general assembly, the court should proceed with great hesitation and caution in passing upon the validity of the enactment.

The same law, in its entirety, was considered by the Illinois supreme court in the case of *Mathews* v. *People*, 202 Ill. 389 (67 N. E. 28, 63 L. R. A. 73, 95 Am. St. Rep. 241). The court there held the entire

act to be unconstitutional, but upon grounds not affecting the question at issue in the instant case.

Counsel for respondent cite and rely upon the case of *State* v. *Moore*, 113 N. C. 697 (18 S. E. 342, 22 L. R. A. 472). The question was again before the supreme court of that State in the case of *State* v. *Hunt*, 129 N. C. 686 (40 S. E. 216, 85 Am. St. Rep. 758), where the holding in the earlier case was distinctly overruled.

In the case of *Moore* v. *City of Minneapolis*, 43 Minn. 418 (45 N. W. 719), a municipal ordinance enacted in pursuance of legislative authority, which required a license fee in the sum of $150, was considered and upheld. In a later case (*Moore* v. *City of St. Paul*, 48 Minn. 331 [51 N. W. 219]), a license fee of $150 was held invalid upon the ground that it was not apportionable; that is, the applicant, according to the terms of the regulation, was obliged to pay $150 without regard to the time of year at which the application was made, all licenses expiring on the 1st of January.

The infirmity of this provision, if it be conceded to be such, is not found in the act now under consideration. The provision of section 1 is that:

"The fee for such license shall be $25.00 per annum, except in cities over 200,000 population, where it shall be $100.00 per annum."

Under this provision we think it clear that the commissioner has authority to pro rate the fee according to the period covered by the license.

It was contended in the case of *People, ex rel. Armstrong,* v. *Warden of City Prison,* 183 N. Y. 223 (76 N. E. 11, 2 L. R. A. [N. S.] 859, 5 Am. & Eng. Ann. Cas. 325), that an ordinance requiring the payment of a license fee of $25 was unconstitutional, as being in conflict with both the State and Federal Constitutions. The court sustained a conviction under said ordinance on the ground that the character of the

business was such as to warrant proper regulation in the exercise of the police power.

In the case of *Ex Parte Dickey*, 144 Cal. 234 (77 Pac. 924; 66 L. R. A. 928, 103 Am. St. Rep. 82, 1 Am. & Eng. Ann. Cas. 428), the supreme court of that State had under consideration a law limiting the compensation to be received by employment agents, which limitation was practically the same as that provided for in section 5 of the act under consideration. It was there held that the regulation was unwarranted and that the business was "not only innocent and innocuous, but highly beneficial, as tending the more quickly to secure labor for the unemployed."

A like result was reached in the case of *City of Spokane* v. *Macho*, 51 Wash. 322 (98 Pac. 755, 21 L. R. A. [N. S.] 263), the decision going upon the ground that the regulation was not general and impartial in its operation, but preyed upon one class to the exclusion of others in respect to a penal act common to all classes of business, and exceeded the reasonable limit of police regulation. See, also, *Shepperd* v. *County Commissioners of Sumpter*, 59 Ga. 535 (27 Am. Rep. 394); *State* v. *Napier*, 63 S. C. 60 (41 S. E. 13).

From a careful consideration of all the authorities, we have reached the conclusion that the business is one properly subject to police regulation and control. The character of those with whom the business is likely to be conducted, in point of capacity for self-protection from fraudulent practices, is such that the legislature might very properly determine that a license system should be adopted, to the end that dishonest and disreputable persons might, in a measure, be excluded from a right to engage in the business and means afforded for the detection of fraud and the redress of wrongs. It seems clear that the character of the business is such as to facilitate the practice of fraud upon the ignorant and credulous.

Nor are we prepared to say that the license fee imposed is excessive. The record contains no evidence tending to show the cost of inspection or enforcement of the terms of the act. Under the circumstances, we are disposed to the view that the sum charged for the license is within the legislative discretion.

The contention of the respondent that the act in question violates article 5, § 30, of the State Constitution, in that under the guise of a general act it is really local legislation, is, in our opinion, untenable. It is true that it provides for a license fee of $100 in cities containing over 200,000 population, and but $25 in other cities, and it is likewise true that at the present time there is but one city in the State of Michigan which has a population of more than 200,000. This fact, however, is not necessarily controlling. The act operates upon all citizens alike, except that a larger sum is charged for the license in larger cities than in smaller ones. Wherever the fee for the license is charged primarily for the purpose of regulation and not for the purpose of revenue, a variable sum may be fixed to meet the varying conditions under which the licensee operates. 25 Cyc. p. 608, and cases cited in note 74. It may well be that the legislature appreciated the fact that inspection for the purpose of proper regulation in large cities would be much more expensive than such inspection in smaller cities, and that the larger sum was fixed for the purpose of meeting such added expense of administration.

4. There remains for consideration only the question whether the act confers upon the commissioner of labor arbitrary powers judicial in their character.

The legislature frequently delegates to boards or commissions the right and power to determine certain facts upon which action is based, and this power has frequently been challenged in our own and other courts. It was considered in this State in the case

of *Feek* v. *Township Board of Bloomingdale*, 82 Mich. 393 (47 N. W. 37, 10 L. R. A. 69), where it was determined that the local option law was valid against the objection that it conferred judicial power upon the board of supervisors. And again in the case of *Sherlock* v. *Stuart*, 96 Mich. 193 (55 N. W. 845, 21 L. R. A. 580), where the power to determine the question as to whether an applicant was a suitable party to have a license to conduct a saloon was delegated.

The exact point was determined contrary to the contention of respondent in the case of *Kennedy* v. *State Board of Registration*, 145 Mich. 241 (108 N. W. 730, 9 Am. & Eng. Ann. Cas. 125). The act there under consideration conferred upon the State board of registration the right to—

"Revoke the certificate of registration, after due notice and hearing of any registered practitioner who inserts any advertisement in any newspaper, pamphlet, circular, or other written or printed paper, relative to venereal diseases or other matter of any obscene or offensive nature derogatory to good morals."

It was there urged that the authority delegated was judicial in character, and therefore unconstitutional. In an exhaustive opinion, supported by many authorities, this court denied the contention, and held that the power delegated is not judicial in character and that—

"If, through nonobservance of the statute, complainant or any other physician is deprived of a constitutional right, there is nothing therein which prevents his obtaining adequate redress in a court."

It is to be presumed that public officials will perform their duty without prejudice or dishonesty. Their failure to act within the limits of their delegated authority may be reviewed in a proper forum.

In the late case of *Michigan Central R. Co.* v. *Railroad Commission*, 160 Mich. 355 (125 N. W. 549), the legislation was attacked upon the ground that legisla-

tive power was conferred upon the commission. We there said, speaking through Mr. Justice STONE, at page 362 of 160 Mich. (125 N. W. 551) :

"It is held that the functions and duties of such commissions are administrative or ministerial, and neither legislative, executive, nor judicial."

Upon this question, see, also, *Union Bridge Co.* v. *United States,* 204 U. S. 364 (27 Sup. Ct. 367) ; *Hubbell* v. *Higgins,* 148 Iowa, 36 (126 N. W. 914, Ann. Cas. 1912B, 822) ; *State* v. *Railway Co.,* 76 Kan. 467 (92 Pac. 606) ; *Oregon, etc., Navigation Co.* v. *Campbell* (C. C.), 173 Fed. 957; and *Railroad Commission Cases,* 116 U. S. 307 (6 Sup. Ct. 334, 388, 1191).

We are of opinion that the act in question is a valid exercise of the police power of the State, and that the judgment must be affirmed.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.