**HULLEY v FARR**

Municipal Court of Cleveland

Decided Oct 6, 1937

J. Bravo, Cleveland, for plaintiff.
Clayton C. Townes, Cleveland, for defendant.

## OPINION

By COPELAND, J.

This case, it seems to this court, is one of importance and of general public interest, because it is one of a series of similar cases pending in this court, and deals with a situation that apparently has been confusing and perplexing both to the local and state licensing authorities, and representatives of which governmental agencies were present in court. Since the advent of night clubs who largely obtain their talent from such agencies operated similarly to that of plaintiff, bureaus similar to that of plaintiff operate in large numbers both in this city and throughout the state and it has been indicated that very few, if any, are licensed.

The fundamental question involved in this matter is whether or not the plaintiff is an "employment agency," as coming within the purview of §§886, 887 and 888, GC, and §§2762, 2763 and 2764, of the Ordinances of the city of Cleveland.

The facts in this case are not in dispute. It seems that on and prior to March, of 1937, the plaintiff contacted different individuals and companies for the purpose of the placement of models, dancers and entertainers. Some of the places thus contacted by the plaintiff were photographic studios, specialty shops who might desire models, night clubs, etc.

One of the individuals thus contacted by the plaintiff was a Mr. Billy Rose, who at that time was in New York but who contemplated putting on an entertainment known as the Aquacade at the Great Lakes Exposition of Cleveland. It seems that Mr. Rose auhorized the plaintiff to hire for him a number of dancers and swimmers who would be participants in the Aquacade show. It appears further that the plaintiff induced Billy Rose to confine his showing

of swimmers and dancers largely to local talent, to which Mr. Rose agreed.

Many young ladies applied to the plaintiff for employment, and one of these was the defendant. Her original application indicates that she desired employment as a photographic model, but it appears further that the plaintiff induced her to seek and accept employment with the Aquacade as a swimmer and dancer, which she agreed to do.

It has been contended in the course of this trial by the defendant that the plaintiff was not the procuring cause of her obtaining employment at the Aquacade, but the court found otherwise and that the plaintiff was the sole and exclusive agency by and through which the defendant obtained her employment at the Aquacade. The court further found that the amount claimed by the plaintiff as a commission for obtaining such employment was fair and reasonable.

It is admitted, however, that the plaintiff at no time obtained a license either from the city of Cleveland or the state of Ohio to operate as an employment agency, and so the fundamental question involved in this case is whether or not, in view of the facts, the plaintiff is in truth and in fact a private employment agency within the purview of the laws hereinbefore referred to.

It has been contended by plaintiff that inasmuch as the defendant did not raise this question by way of answer that this court could not and should not have gone into the question as to whether or not the plaintiff was an employment agency since that matter was not at issue. The court will dispose of this contention immediately by saying that if the plaintiff was in truth and in fact a private employment agency and as such was required to be licensed, then such licensing was a prerequisite to its right to maintain its action and certainly either before, during or after trial the court would have a right to permit an amendment of pleadings to conform with the evidence. However, it comes with poor grace on the part of plaintiff to make this argument when this court would hold that if the plaintiff is required to be duly licensed then it would be necessary for plaintiff to allege in his petition that he is duly licensed as a private employment agency. The court can well see that where the plaintiff was not licensed it could not make such an allegation. However, the fact still remains that fundamentally and in law where in the course of the proceedings it

appears manifest to this court that a prerequisite to the maintenance of its action is the proper licensing, then this matter may be availed of at any time by the defendant, and this right the court gave to the defendant.

The court will not elaborate further on this matter but will proceed immediately to the main contention herein involved, and that is, whether or not the plaintiff is a private employment agency and as such whether or not it should be licensed before doing business. Incidentally, it is agreed that if the plaintiff should have been licensed but failed to obtain such license, then the plaintiff has no standing in court.

The acts in question both under the General Code of Ohio and the Ordinances of the city of Cleveland, prohibiting any person from operating or maintaining a private employment agency for hire or in which a fee is charged an applicant for employment, without obtaining a license, are clearly within the police powers of the state and the city. This subject has been gone into very carefully in our various courts and with few exceptions the conclusion has been reached in favor of the existence of this power. **Wessel v Timberlake, 95 Oh St 21;** Moore v City of Minneapolis, 43 Minn. 418; Price v The People, 193 Ill. 114; The People ex Armstrong v The Warden of the City Prison, 183 N. Y. 223.

Particularly is this court impressed with the fact that an agency operated of the type and character of that of plaintiff should properly be supervised, since he deals with girls of an immature age, and the peculiar type of business is such that unless properly and adequately supervised, may have a demoralizing effect upon applicants. This court by no means intends to cast any reflection upon the high standard maintained by the plaintiff, but rather intends showing that the character of this business is one which should be operated by individuals or officials who are of good moral character and under the supervision and control of the state and municipality wherein such agency operates.

It is contended quite earnestly by counsel for plaintiff that it is not an employment agency, but rather the plaintiff acts as the manager of the defendant and the other girls who sought employment with the plaintiff. It was his hope that out of this aggregation of girls perhaps some few of them might become stars in their respective fields, in which event the plaintiff, as manager, would be in a position to commercial-ize them with great advantage to himself. In support of his argument he cites the cases of an individual managing a boxer or a wrestler or perhaps some prima donna. The court cannot agree with this viewpoint or philosophy. The defendant in this case, together with a large number of other girls, applied to the plaintiff for employment and the plaintiff agreed to use his best efforts to place them for compensation. When thus placed the employees were permitted to receive their salaries themselves. They could discontinue such employment at will and seek employment elsewhere without the aid, advice or consent of plaintiff. In other words they were free agents and never at any time under the control or direction of the plaintiff.

It is true that the plaintiff, through a Miss Skidmore, one of the personnel directors of the plaintiff, did aid the defendant and others to better their position. As for example, in the instant case it was shown quote conclusively that the defendant was not an expert swimmer and so Miss Skidmore exerted her efforts to obtain employment for the defendant as a dancer. But this really was done for the purpose of the placement of the defendant with the Aquacade and in order to fill the various and many openings that had occurred for girls of the physical type of the defendant in the Aquacade show.

On the other hand, in the case of the manager of a boxer or wrestler or a prima donna the custom in connection with such a relationship is somewhat different. There the manager sends his protege wherever he designates, and such protege has little say or control in relation to such employment. The manager collects such remuneration as such protege supposedly is entitled to, out of which he retains part and then pays the balance to his protege. During periods of unemployment the manager generally maintains and sustains the protege, and generally, such protege is under the control and direction at all times of the manager. He or she cannot be construed to be a free agent.

Proceeding further in this matter, it is quite interesting to study the statutes and ordinances in relation to private employment agencies. §886 GC, provides as follows:

"License required to engage in business of employment agency.—No person, firm, association of persons or corporation shall engage in the business of an employment agency, for hire, within the state of Ohio,

without first obtaining a license so to do from the Industrial Commission of Ohio, and paying to said Industrial Commission an annual license fee of one hundred dollars and executing and filing with the said Industrial Commission a bond as provided in §6 of this act."

The provisions of this section, in substance, require all persons, associations, etc., who engage in the business of "an employment agency for hire" within the state to obtain a license and pay an annual license fee. It is quite noteworthy that this and the related sections are applicable to such agencies as are engaged in business "for hire."

In construing this section in relation to the relationship of the parties in the instant action, it is conceded that the plaintiff undertook to obtain employment for the defendant "for hire," viz., for a commission of 10% of her earnings.

"Employment agency" is defined in §887, GC, as follows:

"What deemed an employment agency. —A person, firm, association of persons or corporation who secured, or, by any form of representation or by means of signs, bulletins, circulars, cards, writings, or advertisements, offers or agrees to secure or furnish employment, engagements of help, or information or service of any character concerning or intended or purporting to promote, lead to or consummate employment, shall be deemed an employment agency, and subject to this act governing such agencies."

Construing this section, the plaintiff undoubtedly offered, or agreed to secure, or furnish employment, or information, or service of any character concerning or intended, or purporting to promote, lead to or consummate employment for the defendant and others.

**Sec 888, GC**, defines the term "hire":

"The term 'hire' defined.—The term 'hire,' as used in this act, shall be deemed to mean and include any charge, fee, compensation, service or benefit exacted, demanded or accepted, or any gratuity received, for or in connection with any act, service or transaction comprehended by the term 'employment agency,' or for or in connection with any transaction or representation which includes matters comprehended by the term 'employment agency'."

It is obvious, therefore, that in addition to being an employment agency, in order to make such agency subject to the provisions of the various sections of the Code here involved, it would have to be engaged in such services and charge a fee or receive compensation, either by way of demand, contract or gratuity, in connection with the transaction of furnishing the services. These elements prevail in the relationship established between the plaintiff and the defendant.

It is interesting, however, to study the ordinances in relation to these matters. They are even broader in their terms than that provided for under the statutes of Ohio. Thus, §2763, of Sub-division N. of the Municipal Code of Cleveland, provides as follows:

"The term 'employment agency' means and includes the business of conducting as owner, manager, contractor, sub-contractor or in any other capacity an intelligence office, domestic and commercial agency, theatrical employment agency, general employment bureau, shipping agency, nurses' registry or any other agency or office for the purpose of procuring or attempting to procure help or employment or engagements for persons seeking employment or engagements or for giving information as to where and of whom such help, employment or engagements may be procured, where a fee or commission is exacted, or attempted to be collected for such services, whether such business is conducted in a building or on the street or elsewhere."

It will be noted that they specifically include a "theatrical employment agency."

There are exceptions whereby certain organizations are not subject to the provisions of our code and these are defined under §890, GC, which provides that bona fide educational, religious, charitable, fraternal and benevolent organizations in which no fee, commission or other charge is made for services rendered other than the ordinary membership dues, together with bona fide labor organizations undertaking to secure or securing work for their own members and bona fide employers' organizations undertaking to secure or securing help for their own members. But under no stretch of the imagination can plaintiff, nor does he claim for himself the right to come within the purview of these exceptions.

By reason of the foregoing, the court

does hereby hold as it did at the trial of this case that the plaintiff is ■ an employment agency as defined by the Code of the State of Ohio and the ordinance of the city of Cleveland, and as such was required to obtain a license; that having failed to obtain such a license, the plaintiff cannot maintain any suit for ■ commission claimed to be due it for the placement of employees through plaintiff's efforts.

Wherefore, the motion for a new trial herein filed by the plaintiff is hereby overruled. To all of which the plaintiff hereby excepts.